**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION**

DAVID RODRIGUEZ, individually                                      PLAINTIFF
and on behalf of all others similarly situated

v.                                          No. 2:23-cv-2002

MENA HOSPITAL COMMISSION d/b/a                                DEFENDANT
MENA REGIONAL HEALTH SYSTEM


This Document Relates to All Actions


### PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

# TABLE OF CONTENTS

<u>**SECTION**</u>:                                                                                                <u>**PAGE**</u>:

TABLE OF CONTENTS................................................................................................I

TABLE OF AUTHORITIES ..................................................................................... III

INTRODUCTION ........................................................................................................ 1

STATEMENT OF FACTS .......................................................................................... 2

LEGAL STANDARD.................................................................................................. 4

ARGUMENT ............................................................................................................... 4

    I.     Plaintiffs State a Claim for Negligence ......................................................... 4

        A.    Mena Owes Plaintiffs a Duty to Safeguard Their PII and PHI ................................. 5

            1.   Duty Imposed by Common Law................................................................ 5

            2.   Duty Imposed by Statute................................................................ 7

            3.   Mena Incorrectly States that the Eighth Circuit Rejects Using HIPAA and the FTCA for the Purpose of Establishing Negligence *Per Se* .............................. 8

        B.    Plaintiffs Suffered Damages................................................................ 10

            1.   The Certainly Impending and Increased Risk of Identity Theft and Fraud .......... 10

            2.   Lost Time and Expenses Mitigating the Effects of the Data Breach.................... 12

            3.   Diminished Value of Private Information.............................................. 13

            4.   Plaintiffs Lost the Benefit of Their Bargains .............................. 14

    II.    Plaintiffs State a Claim for Breach of Implied Contract............................... 15

    III.   Plaintiffs State a Claim for Breach of Fiduciary Duty................................ 17

    IV.   Plaintiffs State a Claim for Unjust Enrichment ........................................ 19

    V.    Plaintiffs State a Claim for Invasion of Privacy ....................................... 20

    VI.   Plaintiffs State a Claim for Declaratory Judgment ................................... 22

VII.    Plaintiffs State a Claim for Mena's Violation of the SCA.............................................. 23

   A.    Mena Provides Electronic Communication Services and its Computer
          System is a "Facility" as Defined by the SCA ........................................................ 23

   B.    Plaintiffs Allege that Mena Knowingly Divulged Their Private Information........... 26

CONCLUSION....................................................................................................................... 28

# TABLE OF AUTHORITIES

**CASES:**                                                                                                            **PAGE(S):**

*ABF Freight Sys., Inc. v. Int'l Bhd. of Teamsters*, 645 F.3d 954 (8th Cir. 2011). ........................ 15

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009). ........................................................................................ 4

*Baldwin v. Nat'l W. Life Ins. Co.*,
    No. 2:21-CV-04066-WJE, 2021 WL 4206736 (W.D. Mo. Sept. 15, 2021). ........................... 19

*Bans Pasta, LLC v. Mirko Franchising, LLC*,
    No. 7:13-cv-00360-JCT, 2014 WL 637762 (W.D. Va. Feb. 12, 2014). .................................... 9

*Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024 (N.D. Cal. 2019). ................................................ 11

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). ........................................................................ 7

*Bohach v. City of Reno*, 932 F. Supp. 1232 (D. Nev. 1996). ...................................................... 25

*Borden v. Malone*, 327 So. 3d 1105 (Ala. 2020). ........................................................................ 18

*Brandt v. Med. Def. Assocs.*, 856 S.W.2d 667 (Mo. 1993). ......................................................... 17

*Calhoun v. Google LLC*,
    No. 20-cv-05146- LHK, 2021 WL 1056532 (N.D. Cal. Mar. 17, 2021). ............................... 14

*Carlsen v. GameStop*, 833 F.3d 903 (8th Cir. 2016). .................................................................. 14

*Castillo v. Seagate Tech., LLC*,
    No. 16-cv-01958-RS, 2016 WL 9280242 (N.D. Cal. Sept. 14, 2016). ................................... 16

*Cent. Okla. Pipeline, Inc. v. Hawk Field Servs., LLC*, 400 S.W.3d 701 (Ark. 2012) ................... 7

*Coca-Cola Bottling Co. of Memphis v. Gill*, 100 S.W.3d 715 (Ark. 2003). ................................. 5

*DeCastro v. Bank OZK*,
    No. 6:22-CV-06097, 2022 WL 18228826 (W.D. Ark. Dec. 19, 2022). ................................. 22

*Duggar v. City of Springdale*, 599 S.W.3d 672 (Ark App. 2020). ............................................... 21

*Farmer v. Humana, Inc.*, 582 F. Supp. 3d 1176 (M.D. Fla. 2022). ................................. 13, 15, 17

*FCC v. AT&T Inc.*, 562 U.S. 397 (2011). .................................................................................. 26

*Ferguson & Wheeler Land, Lumber & Handle Co. v. Good*, 165 S.W. 628 (Ark. 1914). ........... 10

*Galaria v. Nationwide Mut. Ins. Co.*, 663 F. App'x 384 (6th Cir. 2016). ................................... 11

*Gallagher v. City of Clayton*, 699 F.3d 1013 (8th Cir. 2012)........................................................ 4

*Hamilton v. Palm*, 621 F.3d 816 (8th Cir. 2010). ......................................................................... 4

*Herman v. Kratche*, 2006 WL 3240680 (Ohio Ct. App. Nov. 9, 2006). ...................................... 18

*In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130 (C.D. Cal. 2021)............. 15, 21

*In re Anthem, Inc. Data Breach Litig.*,
    No. 15-MD-02617-LHK, 2016 WL 3029783 (N.D. Cal. May 27, 2016). ............................... 14

*In re Arby's Rest. Grp. Inc. Litig.*,
    No. 1:17-CV-0514-AT, 2018 WL 2128441 (N.D. Ga. Mar. 5, 2018). ..................................... 9

*In re Brinker Data Incident Litig.*,
    No. 3:18-CV-686-J-32MCR, 2020 WL 691848 (M.D. Fla. Jan. 27, 2020). ....................... 6, 15

*In re Equifax, Inc., Customer Data Sec. Breach Litig.*,
    362 F. Supp. 3d 1295 (N.D. Ga. 2019). .............................................................................. 6, 9

*In re Experian Data Breach Litig.*,
    No. SACV151592AGDFMX, 2016 WL 7973595 (C.D. Cal. Dec. 29, 2016)........................ 14

*In re GE/CBPS Data Breach Litig.*,
    No. 20 CIV. 2903 (KPF), 2021 WL 3406374 (S.D.N.Y. Aug. 4, 2021). ................................ 12

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
    806 F.3d 125 (3d Cir. 2015). .......................................................................................... 23, 24

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*,
    No. 19-MD-2879, 2020 WL 6290670 (D. Md. Oct. 27, 2020)............................................ 9, 14

*In re Michaels Stores Pin Pad Litig.*, 830 F. Supp. 2d 518 (N.D. Ill. 2011). .............................. 25

*In re Netgain Tech., LLC*,
    No. 21-CV-1210 (SRN/LIB), 2022 WL 1810606 (D. Minn. June 2, 2022). ......................... 13

*In re Rutter's Inc. Data Sec. Breach Litig.*, 511 F. Supp. 3d 514 (M.D. Pa. 2021).................... 15

*In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*,
    No. 3:19-CV-2284-H-KSC, 2020 WL 2214152 (S.D. Cal. May 7, 2020). ....................... 13, 14

*In re SuperValu, Inc.*, 925 F.3d 955 (8th Cir. 2019)................................................................... 8, 9

*In re Target Corp. Data Sec. Breach Litig.*,
    66 F. Supp. 3d 1154 (D. Minn. 2014). .................................................................. 15, 16, 19, 20

*In re U.S. Off. of Pers. Mgmt.*, 928 F.3d 42 (D.C. Cir. 2019)...................................................... 13

*Keck v. Am. Emp. Agency, Inc.*, 298, 652 S.W.2d 2 (Ark. 1983). .................................................. 8

*Kolstad v. American Dental Ass'n*, 527 U.S. 526 (1999). ............................................................ 26

*Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868 (9th Cir. 2002). .................................................. 24

*Krottner v. Starbucks Corp.*, 406 F. App'x (9th Cir. 2010)........................................................... 12

*Kuhns v. Scottrade, Inc.*, 868 F.3d 711 (8th Cir. 2017). ................................................................ 15

*Levin v. ImpactOffice LLC*, No. TDC-16-2790, 2017 WL 2937938 (D. Md. July 10, 2017). ..... 24

*MacDonald v. Clinger*, 84 A.D.2d 482 (N.Y. App. Div. 1982). .................................................... 17

*Martin v. Equitable Life Assur. Soc. of the U.S.*, 40 S.W.3d 733 (Ark. 2001). ............................ 22

*Perry v. Bay & Bay Transp. Servs., Inc.*,
    No. CV 22-973 (JRT/ECW), 2023 WL 171885 (D. Minn. Jan. 12, 2023). ............................... 9

*Rand v. Travelers Indem. Co.*,
    No. 21 CV 10744 (VB), 2022 WL 15523722 (S.D.N.Y. Oct. 27, 2022)........................... 22, 23

*Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688 (7th Cir. 2015)..................................... 11, 12

*Rotskoff v. Cooley*, 438 F.3d 852 (8th Cir. 2006). ........................................................................ 21

*Sackin v. Transperfect Glob., Inc.*, 278 F. Supp. 3d 739 (S.D.N.Y. 2017)................................... 13

*Shannon v. Wilson*, 947 S.W.2d 349 (Ark. 1997).................................................................... 5, 7

*Smallman v. MGM Resorts Int'l*,
    No. 220CV00376GMNEJY, 2022 WL 16636958 (D. Nev. Nov. 2, 2022). ............................. 11

*Stasi v. Inmediata Health Grp. Corp.*, 501 F. Supp. 3d 898 (S.D. Cal. 2020). ............................ 11

*Tucker v. Marietta Area Health Care, Inc.*,
    No. 2:22-CV-184, 2023 WL 423504 (S.D. Ohio Jan. 26, 2023). ....................................... 17, 19

*United States v. King*, 898 F.3d 797 (8th Cir. 2018). .................................................................... 27

*United States v. Steiger*, 318 F.3d 1039 (11th Cir. 2003)......................................................... 23, 24

*United States v. Weaver*, 636 F. Supp. 2d 769 (C.D. Ill. 2009). .................................................. 25

*Worix v. MedAssets, Inc.*, 857 F. Supp. 2d 699 (N.D. Ill. 2012). ................................................. 27

*Yanmar Co. v. Slater*, 386 S.W.3d 439 (Ark. 2012). ...................................................................... 5

**STATUTES:**                                                                                        **PAGE(S):**

Ark. Code Ann. § 23-76-129. ...................................................................................................... 18

Ark. Code. Ann. § 21-9-301. ....................................................................................................... 21

Federal Trade Commission Act, 15 U.S.C. § 45 ("FTCA"). ............................................. 8, 9, 10, 23

Federal Wiretap Act, 18 U.S.C. §§ 2510, *et seq.* ........................................................................ 24

Health Insurance Portability and Accountability Act,
  42 U.S.C. §§ 1302d, *et seq.* ("HIPAA"). .............................................................. 8, 10, 18, 23

Stored Communications Act, 18 U.S.C. §§ 2701, *et seq.* ("SCA"). .................................... passim

**RULES:**                                                                                           **PAGE(S):**

9th Cir. R. 36-3(a). ...................................................................................................................... 12

Fed. R. Civ. P. 12(b)(6). ........................................................................................................... 4, 19

Fed. R. Civ. P. 8. ....................................................................................................................... 5, 7

**REGULATIONS:**                                                                                     **PAGE(S):**

Code Ark. R. 007.05.17-14. ........................................................................................................ 19

## INTRODUCTION

As a healthcare provider, Defendant Mena Regional Health System d/b/a Mena Hospital Commission ("Mena") knowingly and actively acquires sensitive and confidential information from its patients. Indeed, in order to receive healthcare services from Mena, patients must entrust their personally identifying information ("PII") and protected health information ("PHI") to Mena. Mena's collection and storage of patients' PII and PHI, including full names, financial account information, medical record/patient account number(s), medical diagnosis treatment and/or clinical information, medical provider name(s), health insurance information, and Social Security numbers (collectively "Private Information") in turn, gives rise to a resulting duty to securely protect such information from those who would wish to use it for wrongful purposes. It is well known that healthcare providers such as Mena are frequent targets of cyberattacks because they store vast troves of sensitive patient information that is highly valuable to cybercriminals who use such information to commit identity theft, tax fraud, medical fraud and more. Accordingly, the harm resulting from the exposure and/or theft of patients' Private Information entrusted to Mena is reasonably foreseeable. Despite the foreseeable risk of harm to its patients, as well as numerous common law, statutory, and contractual duties, Mena failed to implement adequate cybersecurity measures, enabling cybercriminals to access its computer network and exfiltrate sensitive patient information stored therein. For the reasons discussed below, Plaintiffs have sufficiently stated claims for negligence, negligence *per se*, breach of implied contract, breach of fiduciary duty, unjust enrichment, declaratory judgment, and violations for the Stored Communications Act, 18 U.S.C. §§ 2701, *et seq.* ("SCA"), and therefore respectfully request that the Court deny Mena's Motion to Dismiss (the "Motion").

## STATEMENT OF FACTS

Mena is a healthcare network operating throughout western Arkansas and eastern Oklahoma. CAC ¶ 26.[1] As a healthcare provider, Mena has access to, stores, and maintains its patients' Private Information. CAC ¶¶ 30, 33. Patients, including David Rodriguez, Carl Schoolfield, Tanda Smith and her minor children A.S. and K.S., Jessica Smedley and her minor children C.S. and A.S., Daniel Smedley, and Chris Cant (collectively, "Plaintiffs"), must entrust their Private Information to Mena in order to receive healthcare services. CAC ¶ 33. Plaintiffs and Class Members entrusted Mena with their Private Information with the expectation that Mena would take, at a minimum, industry standard precautions to protect, maintain, and safeguard their Private Information. CAC ¶¶ 95, 107, 119, 132, 144, 155. Moreover, by accepting Plaintiffs' and Class Members' Private Information, Mena assumed a legal and equitable duty to prevent the unlawful disclosure of Private Information. CAC ¶ 7. As explained throughout the CAC, Mena's data practices, however, fell below industry standards, and Mena failed to take reasonable steps to protect Plaintiffs' and Class Members' Private Information, leaving the door open to the cyberattack and causing the data breach. CAC ¶¶ 71–94.

On November 8, 2022, Mena discovered that an unauthorized third party accessed and removed files from Mena's system (the "Data Breach"). CAC ¶¶ 2, 4. After a forensic investigation, Mena determined that Plaintiffs' and Class Members' Private Information was removed from Mena's network by an unauthorized third party on or about October 20, 2021. CAC ¶ 5. Mena sent written notifications to Plaintiffs and Class Members, notifying them of the Data Breach (the "Notice") on or around November 22, 2022. The Notice unequivocally stated that "[a]n unauthorized party accessed and potentially removed" Plaintiffs' and Class Members' files,

---

[1] Citations to "CAC" are citations to Plaintiffs' Consolidated Class Action Complaint, ECF No. 45.

which included their Private Information. CAC ¶¶ 1–2. Mena's Notice freely admits that Plaintiffs' and Class Members' Private Information was accessed and exfiltrated in the Data Breach by an unauthorized party. CAC ¶¶ 4, 6.

Theft of the type of Private Information at issue in the Data Breach can be readily used to commit fraud and identity theft. CAC ¶¶ 9, 42, 56, 58, 67, 92. Mena did not merely expose or compromise Plaintiffs' and Class Members' Private Information. Rather, per Mena's own Notice, the Data Breach resulted in the definite theft and exfiltration of some of the most sensitive and durable forms of Private Information—financial account information, medical record/patient account number(s), medical diagnosis treatment and/or clinical information, medical provider name(s), health insurance information, and Social Security numbers. CAC ¶¶ 4, 8, 96, 107, 122–123, 135–136, 145, 157. The Private Information that Mena failed to protect is of such high value and contains such highly sensitive personal details concerning Plaintiffs and Class Members that it can be used for a variety of illicit purposes. CAC ¶¶ 52–54. Using stolen Private Information, identity thieves may "obtain driver's licenses, government benefits, medical services, and housing or even give false information to police." CAC ¶ 53. Theft of private health information is also gravely serious—a thief may use name or health insurance numbers to see a doctor, get prescription drugs, file claims with insurance providers, or receive other care. CAC ¶ 58.

The CAC alleges that studies have found that identity theft wreaks havoc on Plaintiffs' and Class Member's finances, credit history, reputation, and can take time and money to resolve. CAC ¶¶ 67–69. Plaintiffs have first-hand experience dealing with the harm caused by the Data Breach, which includes but is not limited to: (1) Plaintiffs have spent time dealing with the consequences of the Data Breach (*e.g.*, time spent verifying the legitimacy of the Data Breach and self-monitoring accounts and credit reports to ensure no fraudulent activity has occurred); (2) suffered

injury in the form of damages and diminution of their Private Information; (3) incurred lost time, annoyance, interference, and inconvenience as a result of the Data Breach; (4) lost benefits of their bargains with Mena, which they reasonably believed included the provision of reasonable and adequate data security to protect the Private Information they entrusted to Mena; and (5) now face a substantial danger of imminent and impending injury arising from the increased risk of fraud, identity theft, and misuse resulting from their Private Information being placed in the hands of unauthorized third parties. CAC ¶¶ 68–70, 103, 105, 111, 114, 116, 124, 127, 129, 137, 139, 142, 148, 152, 158–159, 162, 164.

## LEGAL STANDARD

In evaluating a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court must "accept as true all facts pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the non-moving party." *Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th Cir. 2012) (citation omitted). A motion to dismiss should be denied where a "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for a misconduct alleged." *Hamilton v. Palm*, 621 F.3d 816, 817 (8th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## ARGUMENT[2]

### I.    Plaintiffs State a Claim for Negligence

"Under Arkansas law, in order to prevail on a claim of negligence, the plaintiff must prove that the defendant owed a duty to the plaintiff, that the defendant breached that duty, and that the breach was the proximate cause of the plaintiff's injuries." *Yanmar Co. v. Slater*, 386 S.W.3d 439,

---

[2] For the purposes of evaluating Mena's Motion, Plaintiffs do not dispute that this Court should apply Arkansas law to all state law claims asserted in the CAC.

449 (Ark. 2012) (citation omitted). "The question of whether a duty of care is owed is a question of law." *Id.* Mena only challenges the duty and damages elements.

### A.      Mena Owes Plaintiffs a Duty to Safeguard Their PII and PHI

Plaintiffs allege Mena owed them a duty to safeguard their Private Information under two theories. First, Mena owed a common law duty based on the known risks that a failure to exercise due care would injure those who had entrusted their private information to Mena. *See, e.g.*, CAC ¶¶ 49–70, 188. Second, Plaintiffs allege a duty can be imputed from statutes under the theory of negligence *per se*. CAC ¶¶ 209–218. Mena responds by improperly attempting to apply stricter pleading requirements than required by the Federal Rules of Civil Procedure and seeking to take refuge in cases applying the law of other jurisdictions that relate to transient consumer interactions. Mena's arguments are in direct contradiction of the notice pleading requirements of Federal Rule of Civil Procedure 8 and ignore the heightened relationship between a provider of health care services and a patient that is qualitatively different than that of a shopper and a grocery store.

#### 1.      *Duty Imposed by Common Law*

Mena incorrectly argues that it owes no duty to Plaintiffs to safeguard their Private Information because no Arkansas court has yet to recognize such a duty. But contrary to Mena's argument, Plaintiffs are not asking this Court to recognize a new duty under Arkansas law. Rather, Plaintiffs are asking this Court to apply Arkansas's traditional tort and negligence principles to the facts of this case. In Arkansas, the test for actionable negligence, insofar as duty is concerned, is one of foreseeability—*i.e.*, whether the consequences of the alleged wrongful act were reasonably to be foreseen as injurious to the person seeking recovery. *See Coca-Cola Bottling Co. of Memphis v. Gill*, 100 S.W.3d 715, 724 (Ark. 2003); *Shannon v. Wilson*, 947 S.W.2d 349, 352 (Ark. 1997)

("The ultimate test in determining the existence of a duty to use due care is found in the foreseeability that harm may result if care is not exercised.").

As alleged, Mena owes Plaintiffs a duty of care to safeguard their Private Information pursuant to long-recognized Arkansas negligence principles. Plaintiffs specifically allege that the threat of cyberattacks and data breaches is widely and publicly known, especially to healthcare providers such as Mena. CAC ¶¶ 49–70. Plaintiffs also allege that, as a healthcare provider that collects highly sensitive Private Information from its patients, Mena knew or should have known that it faced a particularly high risk of a data breach because this information is highly valuable to cybercriminals, but it nevertheless failed to properly guard against this foreseeable risk by implementing reasonable security measures. CAC ¶¶ 36, 49–70.

Put differently, Mena's obligation to protect its patients' Private Information is not, as Mena attempts to argue, a separate duty to protect its patients from criminal acts. In fact, it is Mena's use of inadequate data security measures that made the crime foreseeable and thus created a foreseeable risk to Plaintiffs that triggered Mena's duty to implement reasonable data security measures. Other courts have reached the same conclusion when presented with similar issues and arguments. *See, e.g.*, *In re Brinker Data Incident Litig.*, No. 3:18-CV-686-J-32MCR, 2020 WL 691848, at *8 (M.D. Fla. Jan. 27, 2020) ("Brinker, by collecting personal information and payment card data, had control over the information and had a duty to use reasonable care in protecting that data from theft."); *In re Equifax, Inc., Customer Data Sec. Breach Litig.*, 362 F. Supp. 3d 1295, 1325 (N.D. Ga. 2019) ("The Court concludes that, under the facts alleged in the Complaint, Equifax owed the Plaintiffs a duty of care to safeguard the personal information in its custody. This duty of care arises from the allegations that the defendants knew of a foreseeable risk to its data security systems but failed to implement reasonable security measures.").

Despite these well-pleaded allegations, Mena argues that Plaintiffs failed to allege how Mena breached any duty owed to Plaintiffs, proclaiming that "Plaintiffs must plausibly allege, with facts, how Mena's specific conduct breached its purported duty to protect their information from third party criminal cyber-hackers." Def. Br. at 6. In doing so, Mena asks this Court to apply an incorrect pleading standard. Contrary to Mena's argument, Rule 8 does not require Plaintiffs to plead their claims with "specificity" as to every factual issue questioned by Mena at this stage. Rule 8(a) requires only that the complaint include: (1) a short and plain statement of the grounds of the court's jurisdiction; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought. Fed. R. Civ. P. 8(a); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiffs' CAC satisfies all three of Rule 8(a)'s requirements.

### 2.    *Duty Imposed by Statute*

In the context of negligence *per se*, the violation of a statute is evidence of negligence as Arkansas law does not explicitly establish negligence *per se* from the violation of a statute. *See Cent. Okla. Pipeline, Inc. v. Hawk Field Servs., LLC*, 400 S.W.3d 701, 712 (Ark. 2012) ("Under Arkansas law, the violation of a statute is only evidence of negligence and does not constitute negligence per se."). However, if the purpose of the statutory predicate is the protection of persons who can be foreseeably harmed by a violation, then a violation of that statute can constitute negligence *per se. Shannon v. Wilson*, 947 S.W.2d at 357 ("The existence of a duty to act with care when selling liquor to patrons can be found for an entity licensed to sell alcohol in this state in the affirmative requirements of statutes."); *see also Cent. Okla. Pipeline, Inc.*, 400 S.W.3d at 712 (finding that statutes imposed a duty of care in situations such as "the high duty of care that has been statutorily imposed on licensed alcohol vendors.").

While negligence *per se* normally requires a statutory duty to involve the persons intended to be protected by the statute, the Arkansas Supreme Court has found a statutory-based duty related to others. *Keck v. Am. Emp. Agency, Inc.*, 298, 652 S.W.2d 2, 5 (Ark. 1983) ("While this statute may have been enacted to protect the public from fraudulent practices, it states at least the duty every employment agency has regarding its customers."). In *Keck*, an employment agency sent a worker to a person who had stated he was starting a business and needed an office person. *Id.* at 4. The prospective employer subsequently kidnapped and raped the person sent by the employment agency.

> We believe that a cause of action for negligence against the employment agency was properly stated and was based on the agency's duty of care which arose out of its contractual relationship with Stacy Keck, its ability to foresee some danger to her, and because it had some degree of control over the employers it made available. This control could have been exercised by making further checks on Joiner. The employment agency created its relationship with Mrs. Keck by offering its services and thereby put itself in the position of owing a duty to her; and that duty in this case went beyond merely producing a man who claimed to be an employer.

*Id.* at 6 (internal citation omitted). The Arkansas Supreme Court thus found the source of the duty under several theories, including negligence *per se*.

Here, Mena undertook a duty of reasonable care when it accepted Plaintiffs' Private Information—duties established by, *inter alia*, the Health Insurance Portability and Accountability Act, 42 U.S.C. §§ 1302d, *et seq.* ("HIPAA") and Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45 ("FTCA"). CAC ¶¶ 71–76; 85–88. Dismissal, therefore, would be improper.

### 3.   *Mena Incorrectly States that the Eighth Circuit Rejects Using HIPAA and the FTCA for the Purpose of Establishing Negligence Per Se*

Mena asserts that HIPAA cannot serve as the basis for a negligence *per se* claim in the Eighth Circuit. However, the case Mena cites, *In re SuperValu, Inc.*, 925 F.3d 955 (8th Cir. 2019), relates to Illinois law and does not even discuss HIPAA. Indeed, in *SuperValu*, the Eighth Circuit held that Illinois is unlikely to recognize a legal duty enforceable through a negligence action

arising from the FTCA. *Id.* at 964. But Illinois is not in the Eighth Circuit, and another court within this Circuit has recently rejected a similar argument in another data breach case:

> [Defendant] cites *SuperValu II* and notes that the Eighth Circuit made clear that allowing a negligence per se claim based on Section 5 of the FTCA "would be inconsistent with Congress's anticipated enforcement scheme." *In re SuperValu* ("*SuperValu II*"), 925 F.3d 955, 964 (8th Cir. 2019). However, the *SuperValu II* court was applying Illinois law and explicitly noted that whether a defendant has a legal duty is "a question of state law." *SuperValu II*, 925 F.3d at 963-64. In this lens, the Court analyzed Illinois negligence requirements and found several of those conditions "absent" in the facts of that case, concluding that "Illinois is unlikely to recognize a legal duty enforceable through a negligence action arising from the FTCA." *Id.* at 964. Thus, contrary to [Defendant's] proposition, the Eighth Circuit in *SuperValu II* did not have the occasion to consider whether a negligence per se claim based on Section 5 is colorable under Minnesota law.

*Perry v. Bay & Bay Transp. Servs., Inc.*, No. CV 22-973 (JRT/ECW), 2023 WL 171885, at *7 (D. Minn. Jan. 12, 2023). Mena makes the same erroneous argument here, and this Court should likewise reject it.

In other courts, negligence *per se* liability has been repeatedly premised on a defendant's violation of Section 5 of the FTCA. *See In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, No. 19-MD-2879, 2020 WL 6290670, at *21–23 (D. Md. Oct. 27, 2020); *In re Equifax*, 362 F. Supp. 3d at 1327; *In re Arby's Rest. Grp. Inc. Litig.*, No. 1:17-CV-0514-AT, 2018 WL 2128441, at *8, *14 (N.D. Ga. Mar. 5, 2018) (noting that several courts have held that Section 5 of the FTCA can serve as a basis for a negligence *per se* claim in the data breach setting); *Bans Pasta, LLC v. Mirko Franchising, LLC*, No. 7:13-cv-00360-JCT, 2014 WL 637762, at *12–14 (W.D. Va. Feb. 12, 2014). For example, in *Bans Pasta*, the defendants made the same argument as Mena does here—that the plaintiff's negligence *per se* claim should be dismissed because the FTCA did not give rise to a private cause of action. *Bans Pasta*, 2014 WL 637762, at *12. The claim survived because, among other factors, the plaintiffs had pleaded the requirements for a negligence *per se*

9

claim: (1) defendants violated the statute or rule in question; (2) the rule dictated a standard of conduct or care; (3) the plaintiffs fell within the class of persons the statute was intended to protect; (4) the harm complained of was the same harm the statute was intended to guard against; and (5) violation of the statute proximately caused the plaintiff's injury. *Id.* at *12–14.

The CAC here satisfies all five requirements. *See, e.g.*, CAC ¶¶ 209–218. Because Plaintiffs have alleged a plausible negligence *per se* claim, and because the Eighth Circuit has not—contrary to Mena's assertion—disfavored such a use of HIPAA or the FTCA as the basis for such a claim in Arkansas, Mena's Motion should be denied.

For these reasons, Plaintiffs' well-pleaded and detailed allegations support a finding that Mena owed Plaintiffs a duty to safeguard their Private Information entrusted to Mena.

### B.      Plaintiffs Suffered Damages

Mena's argument that Plaintiffs have failed to plead damages resulting from Mena's negligence wholly misses the mark. In a tort action under Arkansas law, plaintiffs are entitled to recover damages that may be reasonably anticipated and that are the natural consequence of the injury received. *See Ferguson & Wheeler Land, Lumber & Handle Co. v. Good*, 165 S.W. 628 (Ark. 1914). Plaintiffs have alleged cognizable categories of damages in the form of: (1) the certainly impending and increased risk of identity theft and fraud; (2) lost time and expenses mitigating the effects of the Data Breach; (3) diminished value of their Private Information; and (4) lost benefits of their bargains. As explained below, these categories of damages are widely considered to be compensable injuries in the data breach context.

### 1.      *The Certainly Impending and Increased Risk of Identity Theft and Fraud*

Mena argues that Plaintiffs have not suffered damages because the increased risk of identity theft and fraud they face is speculative. However, as courts have recognized "it can be inferred

that theft of social security numbers, financial information, and medical information"—the exact information exfiltrated during the Data Breach—"is primarily financially motivated and realized through identity theft or other forms of fraud." *Stasi v. Inmediata Health Grp. Corp.*, 501 F. Supp. 3d 898, 916 (S.D. Cal. 2020). As the Seventh Circuit has acknowledged, "[w]hy else would hackers break into a [hospital's] database and steal consumers' private information? Presumably, the purpose of the hack is, sooner or later, to make fraudulent charges or assume those consumers' identities." *Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 693 (7th Cir. 2015); *see also Galaria v. Nationwide Mut. Ins. Co.*, 663 F. App'x 384, 388 (6th Cir. 2016) ("Where a data breach targets personal information, a reasonable inference can be drawn that the hackers will use the victims' data for the fraudulent purposes alleged in Plaintiffs' complaints."). Thus, in determining injury, the focus is not on whether the plaintiffs have suffered actual identity theft but "to specifically determine whether the data taken 'gave hackers the means to commit fraud or identity theft.'" *Smallman v. MGM Resorts Int'l*, No. 220CV00376GMNEJY, 2022 WL 16636958, at *6 (D. Nev. Nov. 2, 2022) (quoting *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1034 (N.D. Cal. 2019)).

Here, Plaintiffs allege that cybercriminals exfiltrated their Private Information from Mena's computer systems. CAC ¶¶ 6, 37–38. This information included large swaths of highly sensitive information, including Social Security numbers, driver's license and government identification numbers, financial account information, and protected health information. CAC ¶¶ 4, 33. Plaintiffs further allege numerous ways that this information can be used to commit identity theft, tax fraud, medical fraud, and credit and bank fraud. CAC ¶¶ 56, 58, 67. Put simply, the amount of information taken during the Data Breach gives cybercriminals the means to commit fraud or identity theft. Therefore, Plaintiffs have sufficiently alleged that they "have suffered

imminent and impending injury raising from the substantially increased risk of fraud, identity theft, and misuse" as a result of the Data Breach. CAC ¶¶ 105, 116, 129, 142, 152, 164; *see also In re GE/CBPS Data Breach Litig.*, No. 20 CIV. 2903 (KPF), 2021 WL 3406374, at *9 (S.D.N.Y. Aug. 4, 2021) (holding that plaintiff adequately pled "concrete damages as a proximate result of [a] [d]ata [b]reach" based on allegations that plaintiff experienced "ongoing, imminent, and impending threat of identity theft crimes, fraud, and abuse," and incurred "expenses" for "credit monitoring and identity theft insurance.").

Mena's heavy reliance on the Ninth Circuit's unpublished memorandum opinion in *Krottner v. Starbucks Corp.*, 406 F. App'x (9th Cir. 2010), is misplaced. *Krottner* is a two-page decision that provides scant analysis of whether the increased risk of harm stemming from the theft of a laptop gave rise to cognizable damages under Washington law; it is hardly a "leading case" in the data breach context. A simple key cite reveals that it has been cited by other cases a mere 25 times in the past *thirteen years*. Given that *Krottner* is contrary to the many cases decided after it as data breach law has evolved, and that it is not even precedent under the Ninth Circuit's own rules (*see* Ninth Circuit Rule 36-3(a)) this Court may safely disregard *Krottner* as persuasive authority.

### 2.   *Lost Time and Expenses Mitigating the Effects of the Data Breach*

Plaintiffs have also alleged mitigation damages as a result of the Data Breach. Specifically, Plaintiffs allege that as a result of the Data Breach, they have been required to spend their valuable time monitoring their various accounts to detect and prevent any misuses of their Private Information and will have to maintain these heightened measures for years and possibly their entire lives. CAC ¶¶ 68–70, 111, 124, 137, 148, 158. Courts across the country have recognized that such mitigation efforts are compensable damages. *See, e.g., Remijas*, 794 F.3d at 692–694 (injuries tied

to protecting against future identity theft were sufficient); *In re Netgain Tech., LLC*, No. 21-CV-1210 (SRN/LIB), 2022 WL 1810606, at *13–14 (D. Minn. June 2, 2022); *Farmer v. Humana, Inc.*, 582 F. Supp. 3d 1176, 1186 (M.D. Fla. 2022) (holding allegations that a consumer whose PII and PHI was exposed in a data breach suffered damages where he spent time dealing with the consequences of the breach and that he incurred substantially increased risk of fraud and identity theft); *In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*, No. 3:19-CV-2284-H-KSC, 2020 WL 2214152, at *4 (S.D. Cal. May 7, 2020) ("Increased time spent monitoring one's credit and other tasks associated with responding to a data breach have been found by others courts to be specific, concrete, and non-speculative."); *Sackin v. Transperfect Glob., Inc.*, 278 F. Supp. 3d 739, 749 (S.D.N.Y. 2017) (concluding that a plaintiff's "mitigation expenses satisfy the injury requirements for negligence"); *see also In re U.S. Off. of Pers. Mgmt.*, 928 F.3d 42, 64–66 (D.C. Cir. 2019) (concluding that the plaintiffs' various mitigation efforts sufficient to allege "actual damages" under the Federal Privacy Act of 1974).

Indeed, a contrary rule would penalize parties for taking beneficial actions to reduce risks by denying them the right to seek redress. *See, e.g.*, *Sackin*, 278 F. Supp. 3d at 749 ("mitigation expenses satisfy the injury requirements of negligence; otherwise Plaintiffs would face an untenable Catch–22 [. . .] Plaintiffs were required to take reasonable steps to mitigate the consequences of the data breach; they could not passively wait for their identities and money to be stolen."). Preventing Plaintiffs from recovering mitigation expenses would thus be contrary to the interests of justice.

### 3. *Diminished Value of Private Information*

Plaintiffs have alleged a loss of value to their Private Information that was exposed during the Data Breach. Courts have recognized the diminution in value of Plaintiffs' Private Information

is a cognizable injury. *See In re Marriott*, 440 F. Supp. 3d at 460 ("[T]he growing trend across courts that have considered this issue is to recognize the lost property value of [personal] information.") (collecting cases); *see also Calhoun v. Google LLC*, No. 20-cv-05146- LHK, 2021 WL 1056532, at *21 (N.D. Cal. Mar. 17, 2021) (citing to *Marriott* and collecting cases recognizing lost property value); *In re Solara*, 2020 WL 2214152, at *15 (concluding plaintiffs adequately alleged "an ascertainable loss in the diminution in value of their personal information"); *In re Experian Data Breach Litig.*, No. SACV151592AGDFMX, 2016 WL 7973595, at *5 (C.D. Cal. Dec. 29, 2016) ("[A] growing number of federal courts have now recognized Loss of Value of PII as a viable damages theory") (quoting *In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2016 WL 3029783, at *43 (N.D. Cal. May 27, 2016)). The CAC here alleges loss of value of Plaintiffs' and Class Members' Private Information. *See* CAC ¶¶ 103, 114, 127, 139, 159, 162.

### 4.    *Plaintiffs Lost the Benefit of Their Bargains*

Plaintiffs suffered economic harm where they paid for Mena's services because Mena failed to secure Plaintiffs' Private Information as it had promised, and instead, left it vulnerable to cybercriminals. CAC ¶¶ 12, 33, 45, 220.

The Eighth Circuit has repeatedly recognized that a plaintiff adequately alleges an injury in data breach or disclosure cases by alleging loss of benefit of the bargain. In *Carlsen v. GameStop, Inc.*, the plaintiff alleged breach of contract and unjust enrichment claims premised upon the defendant's disclosure of personal information in violation of the parties' user agreement. 833 F.3d 903, 906–07 (8th Cir. 2016). Like Plaintiffs in this action, the *GameStop* plaintiff alleged that he was damaged when he overpaid for the defendant's services because he did not know the defendant would disclose his personal information to a third party. *Id.*; *see also ABF Freight Sys.*,

14

*Inc. v. Int'l Bhd. of Teamsters*, 645 F.3d 954, 960 (8th Cir. 2011); *Kuhns v. Scottrade, Inc.*, 868 F.3d 711, 716 (8th Cir. 2017).

These cases confirm that Plaintiffs have sufficiently alleged damages because they and Class Members did not receive what they bargained for and what Mena promised. *See In re Target Corp. Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154, 1178 (D. Minn. 2014) (concluding that the plaintiffs' theory that they would not have shopped at Target had they known about Target's data breach plausibly supported unjust enrichment claim).

For these reasons, the Court should deny Mena's motion to dismiss the negligence claim.

## II.    Plaintiffs State a Claim for Breach of Implied Contract.

Courts have routinely found the existence of an implied contract between merchants and customers in a data breach context. *See In re Rutter's Inc. Data Sec. Breach Litig.*, 511 F. Supp. 3d 514, 536–37 (M.D. Pa. 2021) ("[T]he context in which a consumer entrusts data to a merchant may be more suggestive of a promise to secure that data than in an employer-employee relationship. The merchant and consumer are engaged in a momentary transaction that features all sorts of unspoken assurances between the parties—that the goods sold are as advertised and that the tender paid is valid, for example.") (collecting cases); *see also In re Brinker*, 2020 WL 691848, at *4 ("The majority of federal courts have held that the existence of an implied contract to safeguard customers' data could reasonably be found to exist between a merchant and customer when a customer uses a payment card to purchase goods and services."). This same line of reasoning applies with equal—if not greater—force when patients provide their sensitive information to a healthcare provider in order to receive services. *See Farmer*, 582 F. Supp. 3d at 1187; *In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130, 1144 (C.D. Cal. 2021).

Plaintiffs plead the same sort of implied promise as in the cases discussed above—a promise without which they would not have been willing to share their Private Information, and without which Mena could not expect them to provide such information. CAC ¶¶ 33, 220. As part of the consideration for using and paying for Mena's healthcare services, Plaintiffs and Class Members required safeguarding of their Private Information, and Mena promised to do so. CAC ¶¶ 33, 220.

Despite these well-plead allegations, Mena asserts that the relationship between the parties does not bear the hallmarks of a contractual relationship in that it lacks consideration, mutual assent, and damages from the breach. First, Mena argues that Plaintiffs failed to establish that consideration was provided in exchange for the protection of their Private Information. This argument is without merit as the CAC makes clear the mutual consideration—Plaintiffs and Class Members provided their Private Information and payment to Mena, who in turn, promised to provide services and care, including the protection of their Private Information. CAC ¶ 45. This is an exchange that includes mutual consideration no less than it is implied when a consumer provides a payment card to a merchant.

Second, Mena argues that Plaintiffs failed to allege mutual assent because they did not allege the terms of the purported implied contract. However, this argument misses the mark. As courts have recognized "[w]hile [Defendants] made no explicit promises as to the ongoing protection of personal information, it is difficult to imagine how, in our day and age of data and identity theft, the mandatory receipt of Social Security numbers or other sensitive personal information would not imply the recipient's assent to protect the information sufficiently." *Castillo v. Seagate Tech., LLC*, No. 16-cv-01958-RS, 2016 WL 9280242, at *8 (N.D. Cal. Sept. 14, 2016) (citing *In re Target*, 66 F. Supp. 3d at 1176). Put differently, implied in the contract when Plaintiffs

16

provided Mena their Private Information, was an agreement to safeguard the data that was necessary to effectuate the contract.

Third, Mena again refers to its previous arguments regarding damages: those fail for the same reasons set forth above. *See supra* Argument § I(B); *see also Farmer*, 582 F. Supp. 3d at 1187–88 (explaining plaintiffs pleaded damages for breach of contract for the same reasons they did in connection with their negligence claim). For these reasons, the Court should deny Mena's Motion to Dismiss the implied contract claim.

## III.    Plaintiffs State a Claim for Breach of Fiduciary Duty

Mena wishes to draw a distinction between the doctor-patient relationship, which it tacitly admits is capable of being considered fiduciary, and the relationship between the healthcare provider more generally—*i.e.*, the party actually tasked with maintaining the infrastructure by which its agents, the doctors, carry out their fiduciary duties. It is not uncommon for states to grant heightened relationship status to the doctor-patient relationship. Indeed, just recently, a court found a fiduciary duty in the healthcare data breach context: "medical providers [. . .] hold a 'fiduciary duty' with patients and have a duty to keep patient[s'] medical information confidential." *Tucker v. Marietta Area Health Care, Inc.*, No. 2:22-CV-184, 2023 WL 423504, at *6 (S.D. Ohio Jan. 26, 2023) (denying dismissal of a breach of fiduciary duty claim in the  data breach context).

Other states have expressed the fiduciary nature of the doctor-patient relationship. Under Missouri law, "[a] physician occupies a position of trust and confidence as regards his patient—a fiduciary position." *Brandt v. Med. Def. Assocs.*, 856 S.W.2d 667, 670 (Mo. 1993); *see also MacDonald v. Clinger*, 84 A.D.2d 482, 487 (N.Y. App. Div. 1982) ("The relationship of the parties here was one of trust and confidence out of which sprang a duty not to disclose. Mena's breach was not merely a broken contractual promise but a violation of a fiduciary responsibility to plaintiff

17

implicit in and essential to the doctor-patient relation."); *Borden v. Malone*, 327 So. 3d 1105, 1118 (Ala. 2020) ("Alabama recognizes causes of action for breach of fiduciary duty and breach of implied contract resulting from a physician's unauthorized disclosure of information acquired during the physician-patient relationship."); *Herman v. Kratche*, 2006 WL 3240680, at *3 (Ohio Ct. App. Nov. 9, 2006) ("There is no dispute that the Clinic, as plaintiff's medical provider, held a fiduciary position with plaintiff as its patient and had a duty to keep plaintiff's medical information confidential. There is also no doubt that the Clinic breached that duty."). There is no reason to believe that Arkansas law does not conform to this understanding.

Special trust and confidence being the hallmark of a fiduciary relationship, there can be no doubt that there exists a relationship between a patient and a medical provider apart from a normal commercial relationship. Plaintiffs have pled this relationship; and Mena breached it. "Defendant is a healthcare network throughout Polk County, Western Arkansas, and Eastern Oklahoma." CAC ¶ 26. Plaintiffs entrusted their PII and PHI to Mena. CAC ¶¶ 95, 107, 119, 132, 144, 155. "Plaintiffs and Class Members justifiably placed a special confidence in Defendant to act in good faith and with due regard for the interests of Plaintiffs and Class Members to safeguard and keep confidential that Private Information." CAC ¶ 227. Defendant encourages this special relationship, representing they have "a legal duty to protect Plaintiffs and Class Members' Private Information." CAC ¶ 228. Mena breached this special trust, and now seeks to separate itself from the special nature of the relationship, as if patients would entrust their most personal information to just anyone.

Mena attempts to paint the picture as if the relationship between the parties is not one that entailed special confidentiality. But there are formal declarations of the special relationship and need for confidentiality that extends beyond merely the doctor. These are found in federal statutes, such as HIPAA, or state statutes, such as Ark. Code Ann. § 23-76-129, or state regulations, such

as Code Ark. R. 007.05.17-14, which specifically states that "[o]nly authorized personnel shall have access to the medical records. All medical records (including those filed outside the department) shall be secured at all times." *Id.* For these reasons, Plaintiffs have properly pleaded a breach of the special duty owed to themselves and those similarly situated. Thus, Mena's Motion should be denied as to this claim as well.

### IV.   Plaintiffs State a Claim for Unjust Enrichment

Plaintiffs and Class Members conferred a benefit on Mena by providing Mena with their Private Information in the course of paying for medical treatment and services from Mena. CAC ¶ 237. Mena knew Plaintiffs and Class Members paid money to Mena to protect their Private Information, and Mena was enriched when it did not adequately secure their Private Information. CAC ¶¶ 45, 238–241. These facts are sufficient to state a claim for relief in the data breach context. *See Tucker*, 2023 WL 423504, at *7 (denying rule 12(b)(6) motion to dismiss in data breach context on similar allegations); *see also Baldwin v. Nat'l W. Life Ins. Co.*, No. 2:21-CV-04066-WJE, 2021 WL 4206736, at *8 (W.D. Mo. Sept. 15, 2021) (same).

Despite Plaintiffs' well-pleaded allegations, Mena attempts to establish an untenable threshold for an unjust enrichment claim, and then tries to support this claim by again conflating a finding under Illinois law with Eighth Circuit precedent. But "[c]ourts within the Eighth Circuit have similarly allowed unjust enrichment claims for stolen PII when the plaintiff provided payment based on an understanding that their PII would be secure." *Baldwin*, 2021 WL 4206736, at *8 (citing *In re Target*, 66 F. Supp. 3d at 1178). Because there is no requirement to itemize the amount paid for data security, as Mena apparently believes should be the case, Mena's motion should be denied. *See* Def. Br. 15 (incorrectly stating that "a party must allege a specific dollar amount that a plaintiff has turned over to the defendant that resulted in the unjust enrichment.").

But Mena's argument is misplaced for a more basic reason: it rests on a fundamental mischaracterization of Plaintiffs' claims. Here, as in *Target*, Plaintiffs are not asserting that they should have paid less for the services provided because Mena did not provide a promised service. Rather, Plaintiffs allege that "[i]f Plaintiffs and Class Members knew that Defendant had not secured their Private Information, they would not have agreed to provide their PII and PHI to Mena." CAC ¶ 242. *Compare* CAC ¶ 241 ("Mena acquired the monetary benefit and Private Information through inequitable means in that they failed to disclose the inadequate security practices previously alleged.") *with In re Target*, 66 F. Supp. 3d at 1178 ("Plaintiffs' 'would not have shopped' theory, however, is plausible and supports their claim for unjust enrichment."). Plaintiffs have properly stated a claim for unjust enrichment; Mena's Motion must be denied as to this claim, too.

## V.     Plaintiffs State a Claim for Invasion of Privacy

Mena erroneously argues Plaintiffs' invasion of privacy claim fails for two reasons. First, Mena essentially asserts that if it was negligent in exposing Plaintiffs' Private Information to cybercriminals, it cannot have intentionally disclosed this information. But it is plausibly alleged that Mena's intentional failure to secure Plaintiffs' Private Information led to it being disclosed to unauthorized members of the public. CAC ¶ 255 ("Mena acted with a knowing and intentional state of mind when it permitted the Data Breach to occur because it was with actual knowledge that its information security practices were inadequate and insufficient."); ¶ 256 "Because Mena acted with this knowing state of mind, it had notice and knew the inadequate and insufficient information security practices would cause injury and harm to Plaintiffs and the Class."). Second,

Mena also restates its prior argument about damages. Because the issue of damages has been discussed *supra*, Argument § I(B), no further discussion of damages is necessary here.[3]

"Courts have refused to dismiss invasion of privacy claims at the motion to dismiss stage where, as here, a data breach involved medical information, because the disclosure of such information is more likely to constitute an 'egregious breach of the social norms' that is 'highly offensive.'" *In re Ambry Genetics*, 567 F. Supp. 3d at 1143. Under Arkansas law, a for a claim for public disclosure of private facts, the plaintiff must prove:

> (1) that he sustained damages; (2) that appellees made a public disclosure of a fact about [the plaintiff]; (3) that prior to disclosure the fact was not known to the public; (4) that a reasonable person would find the disclosure highly offensive; (5) that appellees knew or should have known that the disclosed fact was private; (6) that the fact was not of legitimate public concern; and (7) that the public disclosure was the proximate cause of [the plaintiff's] damages.

*Duggar v. City of Springdale*, 599 S.W.3d 672, 684 (Ark App. 2020).

Plaintiffs have pleaded all these elements. The first element was discussed above. The second element is satisfied because Plaintiffs pleaded "Mena failed to protect and released to unknown and unauthorized third parties the Private Information of Plaintiffs and the Class." CAC ¶ 250. The third element is satisfied because Plaintiffs pleaded that they intended to keep their Private Information confidential and had a legitimate expectation of privacy. CAC ¶ 31 ("Plaintiffs and Class Members have taken reasonable steps to maintain the confidentiality of their Private Information. Plaintiffs and Class Members relied on Mena to keep their Private Information confidential and securely maintained, to use this information for business purposes only, and to

---

[3] Mena argues in a conclusory fashion that it is entitled to immunity by simply citing to Ark. Code. Ann. § 21-9-301.This is an underdeveloped argument that the Court need not address. *See Rotskoff v. Cooley*, 438 F.3d 852, 854–55 (8th Cir. 2006) (considering underdeveloped argument "abandoned for failure to provide any reasons or arguments for his contentions") (quotation omitted).

make only authorized disclosures of this information."). Plaintiffs satisfy the fourth element because the unauthorized disclosure of their Private Information to third parties is highly offensive to a reasonable person. CAC ¶¶ 252, 254. As to the fifth, sixth, and seventh elements, it is indisputable that Mena had knowledge that Plaintiffs' and Class Members' Private Information should have been kept confidential. There is no public interest at issue, and the disclosure is the proximate cause of Plaintiffs' damages. Plaintiffs have therefore sufficiently alleged all elements of this tort. Mena's motion to dismiss fails as to this claim as well.

## VI.    Plaintiffs State a Claim for Declaratory Judgment

Mena argues that Plaintiffs' declaratory judgment claim should be dismissed because it is not a stand-alone cause of action.[4] While Mena is correct that there is no independent cause of action for a declaratory judgment claim, that Plaintiffs have styled their claim for declaratory relief as a separate count is not fatal to their claim because Plaintiffs may pursue declaratory relief to the extent that their substantive claims survive. *See Rand v. Travelers Indem. Co.*, No. 21 CV 10744 (VB), 2022 WL 15523722, at *10 (S.D.N.Y. Oct. 27, 2022) (in a data breach case, declining to dismiss the plaintiff's claims for declaratory relief where the plaintiff properly pleaded underlying claims for negligence and negligence *per se*).

Here, in Count VI, Plaintiffs incorporate by reference their earlier allegations and refer to the specific substantive provisions under which they are entitled to declaratory relief. Specifically, Plaintiffs allege that pursuant to the Court's authority "[u]nder the Declaratory Judgment Act," it

---

[4] In support of this proposition, Mena relies solely on inapposite cases dismissing declaratory judgment claims where the underlying claims were dismissed, *see DeCastro v. Bank OZK*, No. 6:22-CV-06097, 2022 WL 18228826, at *2 (W.D. Ark. Dec. 19, 2022), or dismissing declaratory judgment claims for other reasons, *see Martin v. Equitable Life Assur. Soc. of the U.S.*, 40 S.W.3d 733, 738 (Ark. 2001).

should enter a judgment declaring that Mena "owe[s] a legal duty to secure patients' Private Information and to timely notify consumers of a data breach under the common law, Section 5 of the FTC Act, and HIPAA." CAC ¶¶ 259–260, 262. Plaintiffs' claim for declaratory judgment is therefore derivative of their substantive claims and dependent on whether those underlying claims proceed. *See Rand*, 2022 WL 15523722, at *10. Because Plaintiffs sufficiently state their other claims, they may seek declaratory relief with respect to those claims. Therefore, it is inappropriate for this Court to dismiss Count VI.

### VII.   Plaintiffs State a Claim for Mena's Violation of the SCA

#### A.   Mena Provides Electronic Communication Services and its Computer System is a "Facility" as Defined by the SCA

Mena claims that the Eighth Circuit has not "found" that a hospital or healthcare provider qualifies as an entity providing an electronic communication service ("ECS") or as a facility for purposes of an SCA violation. However, Mena offers no authority or legal support that the Eighth Circuit has affirmatively stated that a hospital or healthcare provider *cannot and will never* be a qualified entity against which liability for a violation of the SCA can be asserted. To be sure, that is truly what Mena is asking this Court to consider, all the while failing to provide any Eighth Circuit authority for this proposition.

Mena primarily relies on two out-of-circuit cases in support of its argument. However, these cases, *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125 (3d Cir. 2015) and *United States v. Steiger*, 318 F.3d 1039 (11th Cir. 2003) dealt with vastly different circumstances. In *In re Google*, the Third Circuit considered the SCA where "the illicit access at issue was to the plaintiffs' personal web browsers." *In re Google*, 806 F.3d at 146. The district court concluded, and the Third Circuit agreed, that "an individual's personal computing device is not a facility through which an electronic communications service is provided." *Id.* (internal

quotation marks omitted). Similarly, in *Steiger*, the Eleventh Circuit analyzed the Federal Wiretap Act in deciding whether electronic communications sent from an anonymous source to law enforcement constituted an interception of electronic communications. *Steiger*, 318 F.3d at 1041–43, 1046–49. The Eleventh Circuit concluded that the Federal Wiretap Act was not violated when a third-party hacks "into personal computers to retrieve information stored therein." *Id.* at 1049. The facility at issue here is Mena's computer networks, and not an individual's personal computing device; thus, *Google* and *Steiger* are inapplicable here.

ECS is defined a "any service which provides to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. § 2510(15). Mena unjustifiably narrows the plain language of the statute, arguing that ECS cannot apply to Mena because the term only encompasses a phone company, Internet Service Provider ("ISP"), or electronic bulletin board system ("BBS"). To the contrary, the allegations of the CAC clearly place Mena within the statutory ambit of an ECS, and no case cited by Mena supports its argument otherwise.

The SCA was created by Congress in 1986 as Title II of the Electronic Communications Privacy Act (ECPA, Pub.L. 99-508, 100 Stat. 1848, enacted October 21, 1986). Given that the statutory framework of the Electronic Communications Privacy Act, including the SCA, was created well before the ubiquity of the internet, courts "have struggled to analyze problems involving modern technology within the confines of this statutory framework, often with unsatisfying results." *Steiger*, 318 F.3d at 1047 (citing *Konop v. Hawaiian Airlines, Inc*., 302 F.3d 868, 874 (9th Cir. 2002)). Judicial application of the SCA is not without its difficulties. Indeed, its complications have been well-documented by frustrated courts and observers alike. *See, e.g.*, *Levin v. ImpactOffice LLC*, No. TDC-16-2790, 2017 WL 2937938 (D. Md. July 10, 2017) ("applying the definitions of 'electronic storage' is a difficult endeavor because the technology relating to

emails and other electronic communications has changed since the enactment of the SCA and the issuance of many of the judicial opinions interpreting the law").

Several courts have applied the SCA's provisions to entities other than a phone company, ISP, or BBS. *See In re Michaels Stores Pin Pad Litig.*, 830 F.Supp.2d 518, 523 (N.D. Ill. 2011) (noting that "courts have consistently acknowledged that internet service providers, e-mail service providers, and telecommunication companies also provide electronic communication services under the SCA"); *United States v. Weaver*, 636 F. Supp. 2d 769, 769–70 (C.D. Ill. 2009) (noting that Microsoft, the internet and e-mail service provider, provided electronic communication services and remote computing services); *Bohach v. City of Reno*, 932 F. Supp. 1232, 1236 (D. Nev. 1996) (finding a city providing pager service to its police officers was a provider of ECS).

Here, Plaintiffs allege that Mena falls squarely within the provisions of the SCA. Specifically, Plaintiffs allege that Mena provides an ECS through its use of data servers and other computer equipment. CAC ¶ 271. Plaintiffs further allege that Mena "stores its patients' Private Information and utilizes such information to provide services." CAC ¶¶ 276. Indeed, Mena's ordinary course of business is to acquire and electronically transmit information provided by patients to third parties, such as to patients' card issuers or banks for payment services and then transmits electronic communications from those card issuers or banks to merchants indicating that a patients' payment for services has been approved. In this way, Mena acts just like a phone company, ISP, or email provider—being in the business of operating the conduit by which electronic communications are transmitted. Additionally, Mena's staff and employees engage in electronic transmission and communication due to the electronic use, storage, and maintenance of patient files.

25

With respect to the claim that Mena is the provider of "remote computing services" ("RCS"), Plaintiffs' allegations establish that Mena's services meet the statutory definition of that term. RCS is defined as "the provision to the public of computer storage or processing services by means of an electronic communications system. 18 U.S.C. § 2711(2). Plaintiffs allege that Mena collects and stores Private Information it obtains from members of the public. CAC ¶ 33. Indeed, the fact that hackers were able to obtain Private Information from Mena's computer systems at all demonstrates that Mena provided "computer storage."

**B.      Plaintiffs Allege that Mena Knowingly Divulged Their Private Information**

The civil action provision of the SCA imposes liability when "the conduct constituting the violation is engaged in with a knowing or intentional state of mind." 18 U.S.C. § 2707(a). By phrasing Section 2707(a)'s states of mind in the alternative, Congress made clear that a person or entity that engages in any violation of the SCA is liable to a person aggrieved by the violation if it acts either knowingly or intentionally. In the context of a civil-liability statute like the SCA, an unlawful action may be intentional or knowing, and therefore actionable, even if the actor lacked knowledge that the actor's conduct would violate the law.

As the SCA does not define "knowingly" or "intentionally" conduct, it can be reasoned that Mena acted knowingly or intentionally if its acts were not inadvertent. *See, e.g.*, *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 536–37 (1999) (explaining that an employer may commit "intentional discrimination" while either being "unaware of the relevant federal prohibition" or "distinct [ly] belie[ving] that its discrimination is lawful"). When a statute does not define a term, courts typically "give the phrase its ordinary meaning." *FCC v. AT&T Inc.*, 562 U.S. 397, 404 (2011) (citation omitted). It is a well-known legal principle that intent will be presumed when an act leading to the result could have been reasonably expected to cause that result. *Id.* at 825 (defining "constructive intent"). The understood meaning of "knowing" is "to have an awareness

or understanding" or to be "well-informed" of something. *Id.* at 888. Plaintiffs allege that Mena, a company whose primary business includes the acquisition of patients' Private Information, intentionally ignored well-known security risks, and failed to provide adequate security to protect the Private Information it stores and collects.

Mena argues that Plaintiffs insufficiently allege that Mena knowingly divulged their Private Information and relies on *Worix v. MedAssets, Inc.*, 857 F. Supp. 2d 699 (N.D. Ill. 2012). But the *Worix* court considered whether the defendant could be liable under the SCA when an unknown person stole a computer from the car of one of the defendant's employees that contained personal and confidential information that was neither encrypted nor password protected. *Id.* at 700. The *Worix* court found that this chain of events unforeseeable so as not to constitute a "knowing disclosure" for a violation of the SCA. *Id.* at 703. By contrast. Plaintiffs here do not plead anywhere near an attenuated set of facts. Plaintiffs allege that Mena's own computer systems lacked the requisite security measures such that when unauthorized third parties gained access to Mena's computer systems, they were able to exfiltrate the Private Information in Mena's possession. Plaintiffs further allege that healthcare providers are widely known as targets by hackers; and as a result, the risk of the Data Breach was easily foreseeable and that Mena was obligated not to disclose the Private Information in its possession. Nonetheless, Mena failed to create and maintain reasonable safeguards in light of this foreseeable risk, despite promising its patients that it would do so. This is precisely the conduct sufficient to find a knowing disclosure. "Willful blindness may serve as the basis for knowledge if, in light of certain obvious facts, reasonable inferences support a finding that a defendant's failure to investigate is equivalent to burying one's head in the sand." *United States v. King*, 898 F.3d 797, 808 (8th Cir. 2018). By failing to heed of the threat of data breaches commonly directed at healthcare providers, Mena

buried its head in the sand. Such conduct was an abnegation of Mena's common law and statutory duties as well as its own pledge to its patients.

Here, Mena acted either knowingly or intentionally (or both) within the meaning of the SCA in the first instance by not taking commercially reasonable measures to protect confidential information given the widely known and foreseeable risks of data breaches as healthcare providers are repeated targets of cybercriminals. CAC ¶ 272. Mena mischaracterizes Plaintiffs' allegations. Mena argues that the very fact that hackers were able to exfiltrate Private Information without authorization from Mena's computer networks means that Mena could not have intentionally or knowingly divulged the Private Information that was subject to the SCA, but this is incorrect. A person can still find and be injured by a trespass that occurred on his or her property even when a neighbor who was entrusted to close the gate either intentionally or knowingly does not close the gate. A trespass still occurred, and an injury was suffered as a result of the neighbor's actions or inactions. That is what Plaintiffs are claiming here. Plaintiffs sufficiently allege that Mena again acted with the requisite state of mind.

## CONCLUSION

For all the foregoing reasons, and each of them, Plaintiffs respectfully request that the Court deny Mena's Motion to Dismiss.

Dated: June 26, 2023                    Respectfully submitted,

                                        */s/ Randall K. Pulliam*
                                        Randall K. Pulliam
                                        Courtney E. Ross
                                        **CARNEY BATES & PULLMAN, PLLC**
                                        519 West 7th Street
                                        Little Rock, Arkansas 72201
                                        T: 501-312-8500
                                        F: 501-312-8505
                                        rpulliam@cbplaw.com
                                        cross@cbplaw.com

                                        *Interim Liaison Counsel*

Bryan L. Bleichner (admitted *pro hac vice*)
Philip J. Krzeski (admitted *pro hac vice*)
**CHESTNUT CAMBRONNE PA**
100 Washington Avenue South, Suite 1700
Minneapolis, MN 55401
Telephone: (612) 339-7300
bbleichner@chestnutcambronne.com
pkrzeski@chestnutcambronne.com

Danielle L. Perry (admitted *pro hac vice*)
Gary E. Mason (admitted *pro hac vice*)
Lisa A. White (admitted *pro hac vice*)
**MASON LLP**
5335 Wisconsin Avenue, NW, Suite 640
Washington, DC 20015
Telephone: (202) 429-2290
dperry@masonllp.com
gmason@masonllp.com
lwhite@masonllp.com

*Interim Co-Lead Class Counsel*

Josh Sanford (AR Bar No. 2001037)
**SANFORD LAW FIRM, PLLC**
10800 Financial Centre, Parkway, Suite 510
Little Rock, Arkansas 72211
Telephone: (501) 787-2040
josh@sanfordlaw.com

Breean Walas (AR Bar No. 2006077)
**WALAS LAW FIRM**
711 West 3rd Street
Little Rock, AR 72201
Telephone: (501) 246-1067
breean@walaslawfirm.com

Thiago Coelho (admitted *pro hac vice*)
**WILSHIRE LAW FIRM**
3055 Wilshire Boulevard, 12th Floor
Los Angeles, CA 90010
Telephone: (213) 381-9988
Fax: (213) 381-9989
thiago@wilshirelawfirm.com

Christopher D. Jennings
**JOHNSON FIRM**
610 President Clinton Avenue, Suite 300
Little Rock, AR 72201

29

Telephone: (501) 372-1300
chris@yourattorney.com

Gary F. Lynch (*pro hoc vice* forthcoming)
**LYNCH CARPENTER, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
T: (412) 322-9243
F: (412) 231-0246
gary@lcllp.com

Joseph Gates (AR Bar 2010239)
**GATES LAW FIRM**
2725 Cantrell Road, Suite 105
Little Rock, Arkansas 722202
Telephone: (501) 779-8091
Fax: (479) 269-9788
Gates@gateslawpllc.com

Raina Borrelli (*pro hac vice*)
**TURKE & STRAUS LLP**
613 Williamson Street, Suite 201
Madison, WI 53703
Telephone: (608) 237-1775
Fax: (608) 509-4423
rborrelli@turkestrauss.com

*Additional Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 26, 2023, I electronically filed the foregoing document using the electronic filing system, which will send notification of such filing to all attorneys of record.


*/s/ Randall K. Pulliam*
Randall K. Pulliam