**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION**

| | |
|---|---|
| DAVID RODRIGUEZ, *et al.*, | Case No.: 2:23-cv-2002 |
| Plaintiffs, | Hon. P.K. Holmes, III |
| v. | |
| MENA HOSPITAL COMMISSION d/b/a MENA REGIONAL HEALTH SYSTEM, | |
| Defendant. | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS

PAGE

I.    INTRODUCTION .................................................................................................. 1

II.   CASE SUMMARY ................................................................................................ 1

    a.   The Data Breach ........................................................................................... 1

    b.   Plaintiffs' Complaint .................................................................................... 2

    c.   History of Negotiations ................................................................................. 3

III.  SUMMARY OF SETTLEMENT ......................................................................... 3

    a.   The Settlement Class ..................................................................................... 3

    b.   Settlement Benefits ....................................................................................... 4

        i.    Pro-Rata Cash Payments ................................................................... 4

        ii.   Out-of-Pocket Expense Claims ......................................................... 4

        iii.  The Release ........................................................................................ 5

    c.   The Notice and Claim Process ...................................................................... 5

        i.    Notice ................................................................................................. 5

        ii.   Claims ................................................................................................ 6

        iii.  Requests for Exclusion and Objections ............................................. 7

    d.   Fees, Costs, and Service Awards .................................................................. 8

IV.   LEGAL AUTHORITY ......................................................................................... 9

V.    LEGAL DISCUSSION ....................................................................................... 10

    a.   The Settlement Class Should Be Preliminarily Approved ........................... 10

        i.    The Proposed Class Is Sufficiently Numerous. ................................ 12

        ii.   Questions of Law and Fact are Common to the Class. ..................... 12

        iii.  Plaintiffs' Claims and Defenses Are Typical of the Class. .............. 13

    iv.    Plaintiffs and their Counsel Will Provide Fair and Adequate Representation for the Class. ................................................................ 14

    v.    Because Common Issues Predominate over Individualized Ones, Class Treatment Is Superior. ....................................................... 15

  b.    The Settlement Terms Warrant Preliminary Approval ................................. 16

    i.    Class Representatives and Counsel Have Adequately Represented the Class. ....... 17

    ii.    The Settlement Is the Product of Good-Faith Arm's-Length Negotiations, and Is Absent of any Collusion. ............................................... 18

    iii.    The Settlement Agreement Provides Substantial Relief to the Settlement Class, Particularly in Light of the Uncertainty of Prevailing on the Merits........... 18

    iv.    The Proposed Settlement Treats Settlement Class Members Equitably. ............... 20

    v.    Other Factors Considered by Eighth Circuit Courts Weigh in Favor of Preliminary Approval. ........................................................ 20

  c.    The Proposed Settlement Administrator Will Provide Adequate Notice ..................... 21

VI.    CONCLUSION ................................................................. 23

# TABLE OF AUTHORITIES

## CASES                                                                 PAGE(S)

*Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525 (8th Cir. 1996) .................................................... 13

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ...................................................... 11, 15, 16

*Blades v. Monsanto Co.*, 400 F.3d 562 (8th Cir. 2005) ................................................................ 15

*Briles v. Turban*, No. 8:15CV241, 2016 WL 4094866 (D. Neb. Aug. 1, 2016) ...................... 9, 10

*Cant v. Mena Hosp. Comm'n*, No. 22:3-cv-2027-PKH (filed Feb. 15, 2023). ............................... 2

*Caroline C. ex rel. Carter v. Johnson*, 174 F.R.D. 452 (D. Neb. 1996) ...................................... 12

*Chorosevic v. MetLife Choices*, No. 4:05-CV-2394 CAS,
    2007 WL 2159475 (E.D. Mo. July 26, 2007), *aff'd*, 600 F.3d 934 (8th Cir. 2010) ................ 12

*Cohn v. Nelson*, 375 F. Supp. 2d 844 (E.D. Mo. 2005) ................................................................... 9

*DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171 (8th Cir. 1995) ...................................................... 14

*Donaldson v. Pillsbury Co.*, 554 F.2d 825 (8th Cir. 1977) .......................................................... 13

*Hammond v. Bank of N.Y. Mellon Corp.*,
    No. 08 Civ. 6060(RMB)(RLE), 2010 WL 2643307 (S.D.N.Y. June 25, 2010) ...................... 19

*Hapka v. CareCentrix, Inc.*,
    No. 2:16-cv-02372-KGG, 2018 WL 1871449 (D. Kan. Feb. 15, 2018) ................................... 15

*In re Charter Commc'ns, Inc. Secs. Litig.*,
    No. 4:02-CV-1186 CAS, 2005 WL 4045741 (E.D. Mo. June 30, 2005) ................................... 9

*In re Equifax, Inc. Customer Data Sec. Breach Litig.*,
    No. 1:17-md-2800-TWT (N.D. Ga. July 25, 2019) ................................................................. 11

*In re Gen. Motors Corp. Pick–Up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995) ...................................................................................................... 9

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013) .... 19

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
    851 F. Supp. 2d 1040 (S.D. Tex. 2012) ............................................................................ 11, 16

*In re Target Corp. Customer Data Sec. Breach Litig.*, 309 F.R.D. 482 (D. Minn. 2015) ........... 11

*In re Target Corp. Customer Data Sec. Breach Litig.*,
   No. 14-2522 (PAM/JJK), 2015 WL 7253765 (D. Minn. Nov. 17, 2015)................................ 21

*In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*,
   No. 1:14-md-02583-TWT, 2016 WL 6902351 (N.D. Ga. Aug. 23, 2016)............................. 15

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922 (8th Cir. 2005) ...................... 17

*Liddell v. Bd. of Educ. of St. Loui*s,
   No. 4:72CV100 SNL, 1999 WL 33314210 (E.D. Mo. Mar. 12, 1999) ...................................... 9

*Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist.*, 921 F.2d 1371 (8th Cir. 1990)............. 9

*Morgan v. United Parcel Serv. of Am., Inc.*, 169 F.R.D. 349 (E.D. Mo. 1996) .......................... 12

*Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306 (1950) ................................................ 21

*Paxton v. Union Nat'l Bank*, 688 F.2d 552 (8th Cir. 1982).............................................. 12, 14, 17

*Pollard v. Remington Arms Co.*, 320 F.R.D. 198 (W.D. Mo. 2017) ........................................... 18

*Rodriguez v. Mena Hosp. Commission*, No. 2:23-cv-2002-PKH (filed Jan. 6, 2023)................ 2, 7

*Schoenbaum v. E.I. Dupont De Nemours Co.*,
   No. 4:05CV01108 ERW, 2009 WL 4782082 (E.D. Mo. Dec. 8, 2009). ................................. 10

*Schoolfield v. Mena Hosp. Comm'n*, No. 2:23-cv-2031-PKH (filed Feb. 1, 2023). ...................... 2

*Simmons v. Enter. Holdings, Inc.*,
   No. 4:10CV00625 AGF, 2012 WL 718640 (E.D. Mo. Mar. 6, 2012)...................................... 12

*Smedley v. Mena Hosp. Comm'n*, No. 2:23-cv-2021-PKH (filed Feb. 7, 2023)............................ 2

*Smith  v. Mena Reg'l Health Sys.*, No. 2:23-cv-2023-PKH (filed Dec. 23, 2022). ......................... 2

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011). .............................................................. 15

*White v. Nat'l Football League*, 822 F. Supp. 1389 (D. Minn. Apr. 30, 1993)............................ 12

*White v. Nat'l Football League*, 836 F. Supp. 1458 (D. Minn. Aug. 19, 1993) ........................... 18

## **STATUTES**                                                 **PAGE(S)**

Health Insurance Portability and Accountability Act of 1996 ("HIPAA"),
   Pub. L. 104-191, 110 Stat. 1936, 45 C.F.R. §§ 160, 164........................................................ 13

Stored Communications Act,
   18 U.S.C. § 2701, *et seq* ...................................................................................... 3

## OTHER AUTHORITIES                                                    PAGE(S)

1 Herbert Newberg & Alba Conte, *Newberg on Class Actions* § 3.5 (4th ed. 2002) .................. 12

4 *Newberg on Class Actions* § 11.26. .......................................................................... 10

*Manual for Complex Litigation (Fourth)* ................................................................... 22

*Manual for Complex Litigation (Fourth)* § 21.632 ..................................................... 10

## RULES                                                               PAGE(S)

Fed. R. Civ. P. 12 ............................................................................................................ 19

Fed. R. Civ. P. 23. ................................................................................................... 10, 20

Fed. R. Civ. P. 23(a). ...................................................................................................... 11

Fed. R. Civ. P. 23(a)(1). .................................................................................................. 12

Fed. R. Civ. P. 23(a)(2). .................................................................................................. 12

Fed. R. Civ. P. 23(a)(3). .................................................................................................. 13

Fed. R. Civ. P. 23(b) ........................................................................................... 11, 16, 21

Fed. R. Civ. P. 23(c) ........................................................................................................ 21

Fed. R. Civ. P. 23(e) ........................................................................................................ 17

Fed. R. Civ. P. 23(e)(1). .................................................................................................. 21

Fed. R. Civ. P. 23(e)(2). ............................................................................................ 16, 17

Fed. R. Civ. P. 23(e)(3). .................................................................................................. 17

Fed. R. Civ. P. 56 ............................................................................................................ 19

Plaintiffs David Rodriguez, Carl Schoolfield, Tanada Smith, individually and on behalf of her minor children A.S. and K.S., Jessica Smedley, individually and on behalf of her minor children C.S. and A.S., Daniel Smedley, and Chris Cant ("Plaintiffs") submit this Memorandum in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement.

## I.        INTRODUCTION

This class action arises out of the targeted cyberattack on Defendant's network that Plaintiffs allege resulted in unauthorized access to the sensitive data of Defendant's employees and patients (the "Data Incident"). After conducting informal discovery and a full-day mediation, the Parties reached a class settlement in this matter. The Parties' proposed settlement is fair, reasonable, and adequate and should be granted preliminary approval.

## II.       CASE SUMMARY

### a.        The Data Breach

Plaintiffs allege that on or about October 30, 2021, an unauthorized third party gained access to Defendant's computer systems and exfiltrated information stored on the Defendant's computer systems. Defendant discovered the Data Incident on or about November 8, 2022, and approximates that 42,000 individuals were impacted by the Data Incident. Plaintiffs allege Defendant failed to properly safeguard the information of over 42,000 individuals. The information allegedly accessed by the unauthorized actor contained personally identifiable information, including, but not limited to, full names, dates of birth, Social Security numbers, driver's license/government identification numbers, financial account information, medical record/patient numbers, medical diagnosis/treatment information, medical provider names, lab results, prescription information, and health insurance information ("Private Information"). Because of the Data Incident, Plaintiffs and Class Members claim they suffered ascertainable losses

and harm in the form of invasion of privacy, the loss of the benefit of their bargain, out-of-pocket expenses, the value of their time reasonably incurred to remedy or mitigate the effects of the attack, emotional distress, and the imminent risk of future harm caused by the compromise of their sensitive Private Information.

**b.     Plaintiffs' Complaint**

Plaintiffs each received a notice from Defendant that they were victims of the Data Incident in November 2022 (the "Notice of Data Breach"), and each decided to file their respective class actions in the months that followed: *Tanada Smith, et al., v. Mena Regional Health System*, No. 2:23-cv-2023-PKH filed on December 23, 2022, removed February 10, 2023; *David Rodriguez v. Mena Hospital Commission d/b/a Mena Regional Health System*, No. 2:23-cv-2002-PKH filed on January 6, 2023; *Jessica Smedley, et al., v. Mena Hospital Commission d/b/a Mena Regional Health System*, No. 2:23-cv-2021-PKH filed on February 7, 2023; *Carl Schoolfield v. Mena Hospital Commission d/b/a Mena Regional Health System*, No. 2:23-cv-2031-PKH filed on February 1, 2023, removed March 8, 2023; and *Chris Cant, et al., v. Mena Hospital Commission d/b/a Mena Regional Health System and John Doe Insurance Carrier*, No. 22:3-cv-2027-PKH filed on February 15, 2023, removed February 15, 2023. On April 20, 2024, the Court entered an Order consolidating the related actions in the *Rodriguez* matter and appointing Bryan L. Bleichner of Chestnut Cambronne PA and Danielle L. Perry of Mason LLP as Interim Co-Lead Class Counsel and Randy K. Pulliam as Liaison Counsel.

In the current operative Consolidated Amended Complaint ("CAC"), filed May 22, 2023, Plaintiffs alleged individually and on behalf of the Class that, as a direct result of the Data Incident, Plaintiffs and Class Members have suffered numerous actual and imminent injuries, including invasion of privacy, the loss of the benefit of their bargain, out-of-pocket expenses, and the value

of their time reasonably incurred to remedy or mitigate the effects of the attack. ECF No. 45 at ¶¶ 1–4. Plaintiffs, individually and on behalf of other Members of the Class, asserted claims for Negligence (Count I), Breach of Implied Contract (Count II), Breach of Fiduciary Duty (Count III), Unjust Enrichment (Count IV), Invasion of Privacy (Count V), Declaratory Judgment (Count VI), and Violation of Stored Communications Act, 18 U.S.C. § 2701, *et seq*. (Count VII). The Court granted in part and denied in part Defendant's Motion to Dismiss on November 1, 2023.

### c.      History of Negotiations

On April 26, 2024, following Defendant's production of informal discovery to Plaintiffs, the Parties attended a mediation conducted by Bennett G. Picker, *Esq*. Decl. of Danielle L. Perry ("Perry Decl.") ¶ 8. Mr. Picker is a well-regarded mediator with substantial experience handling data breach class action mediations. *Id*. at ¶ 9. The Parties reached a settlement in principle through mediation with Mr. Picker. *Id*. at ¶ 10. Over the following months, the Parties diligently negotiated final terms, drafted, and finalized the Settlement Agreement along with the corresponding exhibits. *Id*. at ¶ 11.

## III.      SUMMARY OF SETTLEMENT

### a.      The Settlement Class

The Settlement Agreement calls for a Settlement Class defined as:

> All natural persons residing in the United States who were sent a Notice Letter notifying them that their Private Information was compromised in the Data Incident.

Settlement Agreement ("Agr.") ¶ 1.7 at Perry Decl. Ex. 1. The Settlement Class specifically excludes: (i) all Persons who timely and validly request exclusion from the Class; (ii) the Judge assigned to evaluate the fairness of this settlement; and (iii) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the

criminal activity occurrence of the Data Incident or who pleads *nolo contendere* to any such charge. *Id.*

**b.      Settlement Benefits**

The Settlement negotiated on behalf of the Class provides for two separate forms of relief: (1) Pro Rata Cash Payments; and (2) Reimbursement of Out-of-Pocket Expenses. *Id.* at ¶ 2.1. Class Members may submit a Claim for any Claimed Benefit for which they qualify and may combine Claims (*e.g.*, a Class Member may be entitled to Claimed Benefits of Pro Rata Cash Payment and/or Out-of-Pocket Expenses). *Id.*

          *i.      Pro-Rata Cash Payments*

After the distribution of Administrative Fees, Service Awards, Out-of-Pocket Expense Claims, attorneys' fees, and Class Counsel's litigation expenses, the Settlement Administrator will make pro rata payment of the remaining Settlement Fund to each Class Member who submits a claim. A Class Member is not required to provide any documentation or attestation to claim the cash payment. *Id.* at ¶ 2.1(a).

          *ii.      Out-of-Pocket Expense Claims*

Additionally, Class Members can submit a Claim Form for reimbursement of documented out-of-pocket losses reasonably traceable to the Data Incident up to $2,000.00 per individual ("Out-of-Pocket Expense Claims"). Out-of-Pocket Expense Claims will include, without limitation, unreimbursed losses relating to fraud or identity theft; professional fees including attorneys' fees, accountants' fees, and fees for credit repair services; costs associated with freezing or unfreezing credit with any credit reporting agency; credit monitoring costs that were incurred on or after September 1, 2023, through the date of claim submission that the claimant attests under penalty of perjury were caused or otherwise incurred as a result of the Data Incident; and

miscellaneous expenses such as notary, data charges (if charged based on the amount of data used), fax, postage, copying, mileage, cell phone charges (only if charged by the minute), and long-distance telephone charges. *Id.* at ¶ 2.1(b).

       *iii.*     *The Release*

The release in this case is tailored to the claims that have been pleaded or could have been pleaded in this case, arising out of the events and circumstances of the Data Incident. *Id.* at ¶ 1.30. Settlement Class Members who do not exclude themselves from the Settlement Agreement will release claims against Defendant and Related Entities related to the Data Incident and/or the data security practices in place at the time of the Data Incident. *Id.*

**c.    The Notice and Claim Process**

       *i.*     *Notice*

The Parties agreed to use Simpluris, Inc. ("Simpluris") as the Notice Specialist and Claims Administrator in this case. *Id.* at ¶ 1.36.

The current and agreed upon Notice Program requires direct Notice be provided to the last known physical address of each Class Member that Defendant possesses. *Id.* at ¶ 3.2(a). Prior to mailing, the Claims Administrator shall run the postal addresses of Settlement Class Members through the United States Postal Service ("USPS") National Change of Address database to update any change of address on file with the USPS. *Id.* at ¶ 3.2(d). The mailing is to be substantially completed within forty-five (45) days of entry of the Preliminary Approval Order. *Id.* ¶ 3.4.

In the event that a Short Notice is returned to the Claims Administrator by the USPS because the address of the recipient is not valid, and the envelope contains a forwarding address, the Claims Administrator shall re-send the Short Notice to the forwarding address within ten (10) days of receiving the returned Short Notice. *Id.* Where in subsequent to the first mailing of a Short

Notice, and at least fourteen (14) days prior to the Opt-Out Date and the Objection Date, a Short Notice is returned to the Claims Administrator by the USPS because the address of the recipient is no longer valid, *i.e.*, the envelope is marked "Return to Sender" and does not contain a new forwarding address, the Claims Administrator shall perform a standard skip trace, in the manner that the Claims Administrator customarily performs skip traces, in an effort to attempt to ascertain the current address of the particular Settlement Class Member in question and, if such an address is ascertained, the Claims Administrator will re-send the Short Notice within seven (7) days of receiving such information. *Id.*

The Claims Administrator will also establish a dedicated Settlement Website and toll-free help line. *Id.* at ¶ 3.2(e)–(f). The Settlement Website will be maintained and updated throughout the Claims Period, and will provide the forms of Short Notice, Long Notice, and Claim Form approved by the Court. *Id.* ¶ 3.2(e); *see also* Agr. Exs. A, B, C. Class Members will be able to submit Claim Forms through the Settlement Website. *Id.* ¶ 1.41. The toll-free help line will be made available to provide Settlement Class Members with additional information about the Settlement via an IVR system. Agr. ¶ 3.2(f).

     *ii.*     *Claims*

The timing of the Claims Process is structured to ensure that all Class Members have adequate time to review the terms of the Settlement Agreement, compile documents supporting their claim, and decide whether they would like to opt-out or object. Perry Decl. ¶ 14. Class Members will have until ninety (90) days after the commencement of Notice to complete and submit their Claim Form to the Claims Administrator, either by mail or online. Agr. ¶ 1.6. The Claim Form, attached to the Settlement Agreement at Exhibit A, is written in plain language to facilitate Settlement Class Members' ease in completing it. *See* Agr. Ex. A. Claim Forms must be

verified by the Settlement Class Members with a statement that his or her claim is true and correct, to the best of his or her knowledge and belief, and is being made under penalty of perjury. *Id.* Notarization shall not be required. *Id.* The Settlement Class Member must however submit reasonable documentation that the out-of-pocket expenses and charges claimed were both actually incurred and plausibly arose from the Data Incident. *Id.* The Parties have agreed to a dispute resolution process that allows the Claims Administrator to request supplementation, and Class Members to accept or reject offers for reimbursement. *Id.* ¶ 2.3.

      *iii.*     *Requests for Exclusion and Objections*

Settlement Class Members will have up to and including sixty (60) days following commencement of the Notice Program to exclude themselves from or object to the Settlement. Agr. ¶¶ 1.24–25. Similar to the timing of the Claims Process, the timing with regard to objections and requests for exclusion is structured to give Settlement Class Members sufficient time to access and review the settlement documents. Perry Decl. ¶ 15.

Any Settlement Class Member who wishes to exclude him/herself from the Settlement must make an individual request in writing, signed, and clearly manifesting their intent to be excluded from the Settlement. Agr. ¶ 4.1. The request must be postmarked by the Exclusion Deadline and include their name, address, telephone number, the name and number of the case, and a signature. *Id*. Any Member of the Settlement Class who elects to be excluded shall not receive any cash benefits of and/or be bound by the terms of this Settlement Agreement. Agr. ¶ 4.2.

Any Settlement Class Member who wishes to object shall file written notice of his/her objection with the Clerk of Court and serve it concurrently on Class Counsel. *Id*. ¶ 5.1. The objection must state: (i) the objector's full name and address; (ii) the case name and docket number, *Rodriguez v. Mena Hospital Commission d/b/a Mena Regional Health Sys.*, No. 2:23-cv-2002

(W.D. Ark.); (iii) information identifying the objector as a Class Member, including proof that the objector is a Member of the Class (e.g., copy of the objector's Settlement Notice, copy of original notice of the Data Incident, or a statement explaining why the objector believes he or she is a Class Member); (iv) a written statement of all grounds for the objection, accompanied by any legal support for the objection the objector believes applicable; (v) the identity of any and all counsel representing the objector in connection with the objection; (vi) a statement whether the objector and/or his or her counsel will appear at the Final Approval Hearing; and (vii) the objector's signature or the signature of the objector's duly authorized attorney or other duly authorized representative (if any) representing him or her in connection with the objection. To be timely, written notice of an objection in the appropriate form must be mailed, with a postmark date no later than the Objection Date, to Clerk of the Court, Judge Isaac C. Parker Federal Building, 30 South 6th Street, Room 1038, Fort Smith, Arkansas 72901. *Id.*

### d.      Fees, Costs, and Service Awards

The Settlement Agreement calls for a reasonable Service Award to be sought for Plaintiffs in the amount of $2,000 per Plaintiff. Agr. ¶ 7.3. Mena has agreed not to oppose Plaintiffs' request for Service Awards. *Id.* ¶ 7.1. The Service Award is meant to compensate Plaintiffs for their efforts on behalf of the Settlement Class, including maintaining contact with counsel, assisting in the investigation of the case, remaining available for consultation throughout the mediation and answering counsel's many questions. Perry Decl. ¶ 16.

After agreeing to the terms of the Settlement on behalf of the Class, counsel for Plaintiffs negotiated their fees and costs separate from the benefit to Class Members, in the amount of $166,666.67 for fees and litigation expenses not to exceed $25,000.00, subject to Court approval. Agr. ¶ 7.1.

Class Counsel will submit a separate Motion seeking Attorneys' Fees, Costs, and Plaintiffs' Service Awards prior to filing the Motion for Final Approval of Class Action Settlement, and prior to Settlement Class Members' deadline to exclude themselves from or object to the Settlement Agreement. *Id*. at p. 36 (Settlement Timeline); Perry Decl. ¶ 18.

## IV.      LEGAL AUTHORITY

Federal Courts strongly encourage settlements, particularly in class actions and other complex matters where inherent costs, delays, and risks of continued litigation might otherwise outweigh any potential benefit the individual plaintiff—or the class—could hope to obtain. *See Cohn v. Nelson*, 375 F. Supp. 2d 844, 852 (E.D. Mo. 2005) ("The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." (quoting *In re Gen. Motors Corp. Pick–Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995)); *see also In re Charter Commc'ns, Inc. Secs. Litig.*, No. 4:02-CV-1186 CAS, 2005 WL 4045741 (E.D. Mo. June 30, 2005); *Liddell v. Bd. of Educ. of St. Louis*, No. 4:72CV100 SNL, 1999 WL 33314210, at *4 (E.D. Mo. Mar. 12, 1999) (noting policy in favor of settlement); *Little Rock Sch. Dist. v. Pulaski Cnty. Special Sch. Dist.*, 921 F.2d 1371, 1383 (8th Cir. 1990) (same). Because cases like the one at issue here, if handled on an individual basis, would heavily tax the system, and cause large and unwarranted expenditures of both public and private resources, the proposed Settlement is the best vehicle for Settlement Class Members to receive relief in a prompt and efficient manner.

At the first (or preliminary approval) stage, trial courts typically first certify the class for settlement purposes, and then consider the fairness of the settlement. *Briles v. Turban*, No. 8:15CV241, 2016 WL 4094866, at *5 (D. Neb. Aug. 1, 2016) (citing 4 *Newberg on Class Actions* § 11.26). "[T]he 'fair, reasonable, and adequate' standard is lowered, with emphasis only on

whether the settlement is within the range of possible approval due to an absence of any glaring substantive or procedural deficiencies." *Schoenbaum v. E.I. Dupont De Nemours Co.*, No. 4:05CV01108 ERW, 2009 WL 4782082, at *2 (E.D. Mo. Dec. 8, 2009). "The purpose of preliminary evaluation of proposed class action settlements is to determine whether the settlement is within the "range of reasonableness" such that notice should be issued to the class." *Briles v. Turban*, 2016 WL 4094866, at *5 (citing 4 *Newberg on Class Actions* § 11.26) (internal quotations omitted). If the Court finds preliminary approval is warranted, Notice of the Settlement will be disseminated to Settlement Class Members who will have the opportunity to make a claim, object, or exclude themselves prior to the second—or final approval—stage of the Settlement.

As set forth below, the Settlement Class proposed warrants certification for settlement purposes. Because the Settlement terms fall with the "range of reasonableness" under both the revised Rule 23 and the factors typically considered by Eighth Circuit Courts, it should be preliminarily approved so that persons in the Settlement Class can be notified of the Settlement and provided an opportunity to voice approval or opposition.

## V.      LEGAL DISCUSSION

### a.      The Settlement Class Should Be Preliminarily Approved

Plaintiffs here seek certification of a Settlement Class consisting of individuals who were mailed notification that their Private Information was potentially impacted as a result of the Data Incident. Agr. ¶ 1.7. The *Manual for Complex Litigation (Fourth)* advises that in cases presented for both preliminary approval and class certification, the "judge should make a preliminary determination that the proposed class satisfies the criteria[.]" § 21.632.

Rule 23(a) sets out four specific prerequisites to class certification: (1) the class must be so numerous that joinder of all members is impracticable; (2) there must be questions of law and fact

common to the class; (3) the claims or defenses of the class representatives must typical of the claims or defenses of the class; and (4) the representative parties must fairly and adequately protect the interests of the class. Further, under Rule 23(b)(3), the Court must find that common questions of law or fact predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Because a court evaluating certification of a class action that settled is considering certification only in the context of settlement, the court's evaluation is somewhat different than in a case that has not yet settled. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). In some ways, the court's review of certification of a settlement-only class is lessened: as no trial is anticipated in a settlement-only class case, the case management issues inherent in the ascertainable class determination need not be confronted. *See id.* Other certification issues however, such as "those designed to protect absentees by blocking unwarranted or overbroad class definitions" require heightened scrutiny in the settlement-only class context "for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Id.*

Class actions are regularly certified for settlement. In fact, similar data breach cases have been certified—on a *national* basis—including the record-breaking settlement in *In re Equifax. See In re Equifax, Inc. Customer Data Sec. Breach Litig.*, No. 1:17-md-2800-TWT (N.D. Ga. July 25, 2019); *see also, e.g.*, *In re Target Corp. Customer Data Sec. Breach Litig.*, 309 F.R.D. 482 (D. Minn. 2015); *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040 (S.D. Tex. 2012). This case should be similarly certified.

i.      *The Proposed Class Is Sufficiently Numerous.*

Numerosity requires "the class [be] so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). While there is no numerical requirement for satisfying the numerosity requirement, forty (40) class members generally satisfies the numerosity requirement. *Chorosevic v. MetLife Choices*, No. 4:05-CV-2394 CAS, 2007 WL 2159475, at *10 (E.D. Mo. July 26, 2007), *aff'd*, 600 F.3d 934 (8th Cir. 2010) (citing 1 Herbert Newberg & Alba Conte, *Newberg on Class Actions* § 3.5 at 247–48 (4th ed. 2002)). Here, the Parties have identified approximately 42,000 individuals whose data was impacted by the Data Incident. Perry Decl. ¶ 4. The large number of persons in the Settlement Class render joinder impracticable. *See, e.g.*, *Caroline C. ex rel. Carter v. Johnson*, 174 F.R.D. 452, 463 (D. Neb. 1996) (finding a class potentially numbering up to 1,037 sufficient to satisfy the requirement for numerosity); *Simmons v. Enter. Holdings, Inc.*, No. 4:10CV00625 AGF, 2012 WL 718640 (E.D. Mo. Mar. 6, 2012) (certifying a class in excess of 200 persons sufficiently numerous to warrant certification); *Morgan v. United Parcel Serv. of Am., Inc.*, 169 F.R.D. 349, 355 (E.D. Mo. 1996) (finding numerosity met for class of at least 19 putative members). As such, the numerosity requirement is easily satisfied.

ii.      *Questions of Law and Fact are Common to the Class.*

Commonality requires Plaintiffs to demonstrate "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The threshold for meeting this prong is not high. Commonality does not require that every question be common to every member of the class, but rather that the questions linking class members are substantially related to the resolution of the litigation even where the individuals are not identically situated. *White v. Nat'l Football League*, 822 F. Supp. 1389, 1403 (D. Minn. Apr. 30, 1993) (citing *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 561 (8th Cir. 1982) (citations and quotations omitted)).

Here, the commonality requirement is met because Plaintiffs can demonstrate numerous common issues exist. For example, whether Mena failed to adequately safeguard the records of Plaintiffs and other Settlement Class Members is a common class-wide question. Defendant's data security safeguards were common across the Class, and those applied to the data of one Settlement Class Member did not differ from those safeguards applied to another.

Other specific common issues include (but are not limited to):

- Whether Mena unlawfully used, maintained, lost, or disclosed Plaintiffs' and Settlement Class Members' private information;

- Whether Mena failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of information compromised in the Data Incident;

- Whether Mena's data security systems prior to and during the Data Incident complied with applicable data security laws and regulations including, *e.g.*, HIPAA; and

- Whether Mena's conduct rose to the level of negligence.

These common questions, and others alleged by Plaintiffs in their Complaint, are central to the causes of action brought here and can be addressed on a class-wide basis. Thus, Plaintiffs have met the commonality requirement of Rule 23.

     *iii.*     *Plaintiffs' Claims and Defenses Are Typical of the Class.*

"Typicality under Rule 23(a)(3) means that there are 'other members of the class who have the same or similar grievances as the plaintiff.'" *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996) (quoting *Donaldson v. Pillsbury Co.*, 554 F.2d 825, 830 (8th Cir. 1977)). "The burden of demonstrating typicality is fairly easily met so long as other class members have

claims similar to the named plaintiff." *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995) (citation omitted). A plaintiff can meet the typicality requirement by showing that the claims of the representatives and members of the class both stem from a single event. *Paxton v. Union Nat'l Bank*, 688 F.2d at 561.

Here, Plaintiffs' and Settlement Class Members' claims all stem from the same event—the cybersecurity breach to Mena's systems that occurred on or about October 30, 2021. Thus, Plaintiffs' claims are typical of the Settlement Class Members' and the typicality requirement is satisfied.

    *iv.*    *Plaintiffs and their Counsel Will Provide Fair and Adequate Representation for the Class.*

Representative Plaintiffs must be able to provide fair and adequate representation for the Class. The focus of the adequacy requirement is whether (1) the class representatives have common interests with the members of the class, and (2) whether class representatives will vigorously prosecute the interests of the class through qualified counsel. *Paxton v. Union Nat'l Bank*, 688 F.2d at 562–63.

Here, Plaintiffs' interests are aligned with those of the Settlement Class in that they seek relief for injuries arising out of the same Data Incident. Plaintiffs' and Settlement Class Members' data was all allegedly compromised by Mena in the same manner. Under the terms of the Settlement Agreement, Plaintiffs and Settlement Class Members will all be eligible for reimbursement for out-of-pocket expenses and pro-rata cash payments.

Further, counsel for Plaintiffs have decades of combined experience as vigorous class action litigators and are well suited to advocate on behalf of the Class. *See* Perry Decl. ¶¶ 2–3. Thus, the requirements of Rule 23(a) are satisfied.

v.      *Because Common Issues Predominate over Individualized Ones, Class Treatment Is Superior.*

To show that common issues predominate, Plaintiffs must demonstrate that their claims can be proven on a systematic, class-wide basis. *Blades v. Monsanto Co.*, 400 F.3d 562, 569 (8th Cir. 2005); *see also Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551–57 (2011). This requirement "tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. at 623.

In this case, the key predominating questions are whether Mena had a duty to exercise reasonable care in safeguarding, securing, and protecting the PII of Plaintiffs and the Settlement Class, and whether Mena breached that duty. The common questions that arise from Mena's conduct predominate over any individualized issues. Other courts have recognized that the types of common issues arising from data breaches predominate over any individualized issues. *See, e.g.*, *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 312–15 (N.D. Cal. 2018) (finding predominance was satisfied because "Plaintiffs' case for liability depend[ed], first and foremost, on whether [the defendant] used reasonable data security to protect Plaintiffs' personal information," such that "the claims rise or fall on whether [the defendant] properly secured the stolen personal information," and that these issues predominated over potential individual issues); *see also Hapka v. CareCentrix, Inc.*, No. 2:16-cv-02372-KGG, 2018 WL 1871449, at *2 (D. Kan. Feb. 15, 2018) (finding predominance was satisfied in a data breach case, stating "[t]he many common questions of fact and law that arise from the E-mail Security Incident and [Defendant's] alleged conduct predominate over any individualized issues"); *In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-md-02583-TWT, 2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016) (finding common predominating questions included whether Home Depot failed to reasonably protect class members' personal and financial information, whether it had a legal

duty to do so, and whether it failed to timely notify class members of the data breach); *In re Heartland*, 851 F. Supp. 2d at 1059 (finding predominance satisfied in data breach case despite variations in state laws at issue, concluding such variations went only to trial management, which was inapplicable for settlement class).

Additionally, because the claims are being certified for purposes of settlement, there are no issues with manageability, and resolution of thousands of claims in one action is far superior to individual lawsuits. *Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").

The resolution of tens of thousands of claims in one action is far superior to litigation via individual lawsuits. Class certification—and class resolution—guarantee an increase in judicial efficiency and conservation of resources over the alternative of individually litigating tens of thousands of individual data breach cases arising out of the *same* Data Incident.

The common questions of fact and law that arise from Defendant's conduct predominate over any individualized issues, a class action is the superior vehicle by which to resolve these issues, and the requirements of Rule 23(b)(3) are met. Accordingly, the Class should be certified for settlement purposes.

**b.    The Settlement Terms Warrant Preliminary Approval**

Under Rule 23(e)(2), in order to give a settlement final approval, the Court must consider whether the proposed settlement is "fair, reasonable, and adequate after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . . ; and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(A)–(D).

In determining whether the relief provided is adequate, Courts must consider: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(i)–(iv).

Before the 2018 revisions to Rule 23(e), The Eighth Circuit had developed its own factors for consideration on final approval including consideration of: (1) the merits of the plaintiff's case weighed against the terms of the settlement, (2) the defendant's financial condition, (3) the complexity and expense of further litigation, and (4) the amount of opposition to the settlement. *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 932 (8th Cir. 2005).

The Settlement here falls with the range of possible approval in consideration of both the Rule 23 and Eighth Circuit factors. As such, preliminary approval is warranted.

        i.        *Class Representatives and Counsel Have Adequately Represented the Class.*

As discussed at Section V(a)(iv), *supra*, the adequacy inquiry examines whether (1) the class representatives have common interests with the members of the class, and (2) whether class representatives will vigorously prosecute the interests of the class through qualified counsel. *Paxton v. Union Nat'l Bank*, 688 F.2d at 562–63. Here, the Class Representatives, like all Class Members, have been victims of the same Data Incident, and thus have common interests with the Class. Moreover, they have ably represented the Class, maintaining contact with counsel, assisting in the investigation of the case, reviewing the material terms of the Settlement Agreement, remaining available for consultation throughout the mediation and answering counsel's many questions. Perry Decl. ¶ 16.

Proposed Class Counsel too have vigorously pursued the interests of the Class in securing a Settlement that brings immediate benefits to Class Members while avoiding the risks of continued litigation. In doing so, they leaned on their extensive experience in hospital data breach litigation, their detailed investigation of this particular matter, and informal discovery exchanged during the course of their negotiations. Perry Decl. ¶¶ 4–12, 19. As such, this factor warrants preliminary approval.

ii.      *The Settlement Is the Product of Good-Faith Arm's-Length Negotiations, and Is Absent of any Collusion.*

Here, the Settlement was reached only after months of arm's length negotiations between counsel for the Parties. Proposed Class Counsel conducted an extensive investigation into the merits of Plaintiffs' claims prior to filing their Complaint and were well positioned throughout settlement negotiations to have a full understanding of the value of Plaintiffs' and Class Members' claims. *See White v. Nat'l Football League*, 836 F. Supp. 1458 (D. Minn. Aug. 19, 1993) (finding no evidence of collusion and concluding settlement was the result of arm's length negotiations); *Pollard v. Remington Arms Co.*, 320 F.R.D. 198, 220 (W.D. Mo. 2017) (finding a settlement reached after extensive investigation and discovery by class counsel was reached in good faith). As such, the Settlement was the product of good faith, non-collusive, and arm's length negotiations and should be approved.

iii.     *The Settlement Agreement Provides Substantial Relief to the Settlement Class, Particularly in Light of the Uncertainty of Prevailing on the Merits.*

Most importantly, the Settlement guarantees Class Members real, monetary relief for harms suffered due to the Data Incident. Thus, the third and most important factor weighs heavily in favor of preliminary approval.

Settlement Class Members who submit valid claims are eligible to receive reimbursement of documented out-of-pocket losses reasonably traceable to the Data Incident up to $2,000.00 per individual. Agr. ¶ 2.1(b). After the distribution of Administrative Fees, Service Awards, Out-of-Pocket Expense Claims (each of which is defined below in this Section), attorneys' fees, and Class Counsel's litigation expenses, Settlement Class Members can also each receive a *pro rata* payment of the remainder of the Settlement Fund. *Id*. at ¶ 2.1(b).

The value achieved through the Settlement Agreement is guaranteed, where chances of prevailing on the merits are uncertain. While Plaintiffs strongly believe in the merits of their case, they also understand that Mena will assert a number of potentially case-dispositive defenses. In fact, Mena already caused a number of Plaintiffs' claims to be dismissed by its Motion to Dismiss. Should litigation continue, Plaintiffs would likely have to survive a motion for summary judgment in order to proceed with litigation. Due at least in part to their cutting-edge nature and the rapidly evolving law, data breach cases like this one generally face substantial hurdles. *See Hammond v. Bank of N.Y. Mellon Corp*., No. 08 Civ. 6060(RMB)(RLE), 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage). Class certification is another hurdle that would have to be met—and one that has been denied in other data breach cases. *See, e.g.*, *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig*., 293 F.R.D. 21 (D. Me. 2013).

Plaintiffs dispute the defenses Mena will likely assert, but it is obvious that Plaintiffs' success at trial is far from certain. Through the Settlement, Plaintiffs and Class Members gain significant benefits without having to face further risk of not receiving any relief at all.

> ### iv.    *The Proposed Settlement Treats Settlement Class Members Equitably.*

Here, the proposed Settlement does not improperly discriminate between any Member of the Class, as all Settlement Class Members are entitled to the same relief. All Settlement Class Members are eligible to make a claim for out-of-pocket expenses and a pro-rata cash payment. Importantly, direct Notice will be sent to Settlement Class Members, and all Settlement Class Members will also have the opportunity to object to or exclude themselves from the Settlement. And, while Plaintiffs will each be seeking a $2,000 award for their services on behalf of the Class, this award is equal or *less than* the amount that any given Class Member can claim in reimbursements and pro-rata cash payment.

Accordingly, this factor also weighs in favor of preliminary approval.

> ### v.    *Other Factors Considered by Eighth Circuit Courts Weigh in Favor of Preliminary Approval.*

The factors considered by Eighth Circuit Courts prior to the amendment of Rule 23, and still considered by those Courts today, also weigh in favor of final approval.

<u>First</u>, the Settlement provides for significant relief in light of the risks of proceeding with further litigation. As discussed extensively in Section V(b)(iii), *supra*, while Plaintiffs are confident in the merits of their claims, they face significant risk in further litigation due in part to the constantly evolving nature of data breach litigation. Thus, this factor weighs in favor of preliminary approval.

<u>Second</u>, the Defendant's financial condition is not at issue here, and thus does not weigh either for or against approval of the Settlement.

<u>Third</u>, continued litigation is likely to be complex, lengthy, and expensive. Although Plaintiffs are confident in the merits of their claims, the risks discussed above cannot be disregarded. Aside from the potential that either side will lose at trial, the Plaintiffs anticipate

incurring substantial additional costs in pursuing this litigation further. Should litigation continue, Plaintiffs would need to complete significant discovery and attendant motions practice and likely need to counter a motion for summary judgement and both gain and maintain certification of the Class. The level of additional costs would significantly increase as Plaintiffs began their preparations for the certification argument and if successful, a near inevitable interlocutory appeal attempt. As at least one court has found in this Circuit, because the "legal issues involved in [in data breach litigation] are cutting-edge and unsettled . . . many resources would necessarily be spent litigating substantive law as well as other issues." *In re Target Corp. Customer Data Sec. Breach Litig.*, No. 14-2522 (PAM/JJK), 2015 WL 7253765, at *2 (D. Minn. Nov. 17, 2015).

*Fourth*, while no opposition to the Settlement is currently known, this factor is better examined after notice has been issued to the Class, and thus does not weigh either for or against preliminary approval of the Settlement.

Thus, these additional factors weigh in favor of approving a result exactly like that obtained by Plaintiffs and Class Counsel. Accordingly, the Settlement should be preliminarily approved.

### c.    The Proposed Settlement Administrator Will Provide Adequate Notice

Rule 23(e)(1) requires the Court to "direct reasonable notice to all class members who would be bound by" a proposed settlement. For classes, like this one, certified under Rule 23(b)(3), parties must provide "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The best practicable notice is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

The Notice provided for by the Settlement Agreement is designed to meet all the criteria set forth by Rule 23 and the Manual for Complex Litigation. *See* Agr. Exs. A–C. Here, the Settlement Administrator will disseminate direct and individual Notice, via first class mail to the last known physical address of each Class Member that Defendant possesses. Agr. ¶ 3.2(a). The mailing will be completed only after the Settlement Administrator has run the postal addresses of Class Members through the United States Postal Service ("USPS") National Change of Address database to update any change of address on file with the USPS, and any Notices returned as undeliverable will either be forwarded where a forwarding address is provided or, if time allows, will be resent after performance of a standard skip trace. *Id.* at ¶ 3.2(d).

Not only has Mena agreed to provide Settlement Class Members with individualized Notice via a direct mail, but all versions of the Settlement Notice will be available to Settlement Class Members on the Settlement Website, along with all relevant filings. *Id.* at ¶ 3.2(c). The Settlement Administrator will also make a toll-free telephone number available by which Settlement Class members can seek answers to questions or request a Notice or Claim Form be mailed to them at their address. *Id.* at ¶ 3.2(f).

The Notices themselves are clear and straightforward. They define the Class; clearly describe the options available to Class Members and the deadlines for taking action; describe the essential terms of the Settlement; disclose the requested Service Award for the Class Representatives as well as the amount that proposed Settlement Class Counsel intends to seek in fees and costs; explain procedures for making claims, objections, or requesting exclusion; provide information that will enable Settlement Class Members to calculate their individual recovery; describe the date, time, and place of the Final Fairness Hearing; and prominently display the address and phone number of Class Counsel. *See* Perry Decl. ¶ 20; Agr. Exs. A–C.

The Notice is designed to be the best practicable under the circumstances, apprises Settlement Class Members of the pendency of the action, and gives them an opportunity to object or exclude themselves from the Settlement. Perry Decl. ¶ 21. Accordingly, the Notice Process should be approved by this Court.

## VI.      CONCLUSION

Plaintiffs have negotiated a fair, adequate, and reasonable Settlement that guarantees Settlement Class Members significant relief in the form of out-of-pocket costs reimbursements and pro-rata cash payments. For these and the above reasons, the Settlement Agreement clearly falls within the range of reasonableness and Plaintiffs respectfully request this Court grant their Motion for Preliminary Approval of Class Action Settlement.

Dated: June 17, 2024                                         Respectfully submitted,

*/s/ Danielle L. Perry*
Danielle L. Perry (admitted *pro hac vice*)
Gary E. Mason (admitted *pro hac vice*)
Lisa A. White (admitted *pro hac vice*)
**MASON LLP**
5335 Wisconsin Avenue, NW, Ste 640
Washington, DC 20015
Tel: (202) 429-2290
dperry@masonllp.com
gmason@masonllp.com
lwhite@masonllp.com

Bryan L. Bleichner (admitted *pro hac vice*)
Philip J. Krzeski (admitted *pro hac vice*)
**CHESTNUT CAMBRONNE PA**
100 Washington Avenue South, Ste 1700
Minneapolis, MN 55401
Tel.: (612) 339-7300
bbleichner@chestnutcambronne.com
pkrzeski@chestnutcambronne.com

*Plaintiffs' Interim Co-Lead Class Counsel*

Randall K. Pulliam (AR Bar 981105)
Courtney E. Ross (AR Bar 2021156)
**CARNEY BATES & PULLIAM, PLLC**
519 West 7th Street
Little Rock, AR 72201
Tel.: (501) 312-8500
rpulliam@cbplaw.com
cross@cbplaw.com

*Plaintiffs' Interim Liaison Counsel*