UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

David Rodriguez, *et al*., on behalf of himself
and all others similarly situated,

             Plaintiffs,

   v.

Mena Hospital Commission d/b/a Mena
Regional Health System,

             Defendant.

Case No. 2:23-cv-02002-TLB

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED**
**MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiffs David Rodriguez, Carl Schoolfield, Tamada Smith, individually and on behalf of her minor children A.S. and K.S., Jessica Smedley, individually and on behalf of her minor children C.S. and A.S., Daniel Smedley, and Chris Cant ("Plaintiffs") move for entry of an Order granting final approval of this proposed Class Action Settlement and certifying the Settlement Class.

For the reasons set forth below, Plaintiffs respectfully request that Court, after the final approval hearing scheduled for August 11, 2025, grant this Motion for Final Approval of Class Action Settlement, grant Plaintiffs' Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Service award to Plaintiffs (ECF Nos. 72-74), and enter a final judgment dismissing this case.

1

## I.    INTRODUCTION

Plaintiffs, by and through Class Counsel,[1] on behalf of themselves and the Settlement Class[2], respectfully submit this Memorandum of Law in support of their Motion pursuant to Federal Rule of Civil Procedure ("Rule 23") 23(e) requesting final approval of this proposed class action settlement ("Settlement") on the terms set forth in the Settlement Agreement ("S.A") (ECF No. 68-2) and for the certification of the Settlement Class.

If approved, the Settlement will successfully resolve the claims of approximately 42,000 individuals nationwide who were impacted by the Data Incident. The Settlement brings meaningful resolution and significant benefits to the Settlement Class without requiring further delay, risk, and expense. As discussed below, the Settlement provides Class Members with the ability to make a claim for a Pro Rata Cash Payment and Reimbursement of Out of Pocket Expenses. S.A., ¶ 2.1.

## II.    INCORPORATION BY REFERENCE

Plaintiffs incorporate by reference the Memorandum in support of the Unopposed Motion for Preliminary Approval of Class Settlement (ECF No. 68) ("Motion for Preliminary Settlement"), the Memorandum in support of Plaintiffs' Motion for Attorneys' Fees, Reimbursement of Expenses, and Service Award (ECF No. 73), and associated declarations and exhibits.

## III.    SUMMARY OF ACTION AND SETTLEMENT

### A.  Background

---

[1] The Court granted preliminary approval to appoint Danielle Perry of Mason LLP and Bryan L. Bleichner of Chestnut Cambronne PA as Class Counsel.
[2] All capitalized terms herein shall have the same meanings as those ascribed to them in the Settlement Agreement (ECF No. 46-1).

Plaintiffs provide the factual background, procedural background, and history of negotiations in § II in the Motion for Preliminary Approval. ECF No. 68, PAGEID 7-9.

### B. Terms of the Settlement

Plaintiffs detail the settlement benefits in § III in the Motion for Preliminary Approval. *Id*., PAGEID 9-11.

### IV.    NOTICE PROGRAM AND SETTLEMENT ADMINISTRATION

The Court granted preliminary approval on February 12, 2025 (ECF No. 71) and that the Settlement, as embodied in the Settlement Agreement, as being fair, reasonable and adequate to the Settlement Class. *Id*., PAGEID 3.

On or about February 25, 2025, Simpluris received from Defendant's Counsel a data file containing 42,973 Settlement Class Member records. *Id.*, ¶ 7. The records included the names and mailing addresses of Settlement Class Members. *Id*. Simpluris reviewed the data file and removed duplicative records, resulting in 41,837 Settlement Class Member unique records ("Class List"). *Id*.

On March 14, 2025, Simpluris caused the Postcard Notice to be mailed via the United States Postal Service ("USPS") first class mail, postage prepaid, to 41,837 Settlement Class Members.  *Id*., ¶ 8. Prior to mailing, the Settlement Class Member mailing addresses were processed through the USPS National Change of Address database to identify updated addresses for individuals who have moved within the last four years and who filed a change of address card with the USPS. *Id*., ¶ 8. 13,174 Postcard Notices that were returned by the USPS without a forwarding address and were subjected to an address verification search ("skip trace") in an attempt to locate an updated address. *Id*. ¶ 10. As a result of the above-described efforts, of the 13,174 Postcard Notices were returned as undeliverable, 6,845 were re-mailed to updated addresses. *Id*.

As of the date of this Declaration, Simpluris estimates that approximately 35,508 of the 41,837 unique Settlement Class Members on the Class received Notice via mail. *Id*. Based on this information, Simpluris estimates that approximately 75.3% of the Settlement Class received notice of the settlement via mail.

On March 14, 2025, Simpluris activated the case-specific website dedicated to this Settlement: **www.MenaRegionalDataSettlement.com** (the "Settlement Website"). *Id*., ¶ 11. The Settlement Website includes important dates and deadlines, and Settlement-related documents, including the Class Action Settlement Agreement and Release, the Preliminary Approval Order, a downloadable version of the Notice of Class Action Settlement, and the Claim Form. *Id*. Settlement Class Members were able to submit a Claim Form via the Settlement Website's secure online claim portal or download and print a Claim Form to be completed returned by mail.

On March 14, 2025, Simpluris activated the following toll-free number dedicated to this Settlement: 1-833-244-7350. *Id., ¶* 12. The system is accessible 24 hours a day, 7 days a week, and will remain in operation throughout the settlement administration. *Id*.

The deadline for Settlement Class Members to submit a Claim Form is June 12, 2025. *Id*., ¶ 13. As of July 1, 2025, Simpluris has received 2,481 Valid Claim Form submissions, representing 5.93% of the Settlement Class. *Id*. These Claim Form submissions are still subject to final audits, including the full assessment of each claim's validity. *Id*. Simpluris will continue to report to the Parties the number of Claim Form submissions it receives and processes. *Id*.

The deadline for Settlement Class Members to request exclusion from the Settlement was May 13, 2025. *Id., ¶* 14. As of July 1, 2025, Simpluris has received zero (0) timely exclusion requests. *Id*. ¶ 15. The deadline for Settlement Class Members to submit an objection to the

Settlement was May 13, 2025.  *Id.*, ¶ 16. As of July 1, 2025, Simpluris has received zero (0) objections. *Id.* ¶ 17.

## V.    THE SETTLEMENT CLASS SATISFIES THE REQUIREMENTS OF RULE 23 AND SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

The Court found, at preliminary approval, that: (a) the Settlement Class is so numerous that joinder of all Settlement Class Members would be impracticable; (b) there are issues of law and fact common to the Settlement Class; (c) Plaintiffs and Class Counsel fairly and adequately represent the Settlement Class; (d) The claims of Plaintiffs are typical of those of Settlement Class members; (e) Common issues predominate over any individual issues affecting the members of the Settlement Class; and (f) a class action and class settlement is superior to other means of resolving this matter. *See* ECF No. 71, PAGEID 3-4.

Nothing has changed since this initial determination. For these same reasons, this Court should finally certify the Settlement Class for settlement purposes.

## VI.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE APPROVED

### A.  The Role of the Court in Determining Whether to Approve a Class Action Settlement

"Under Rule 23(e), the district court acts as a fiduciary who must serve as guardian of the rights of absent class members." *Kloster v. McColl (In re Bankamerica Corp. Sec. Litig.)*, 350 F.3d 747, 751 (8th Cir. 2003) (quoting *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975)). Because settlements are the result of a process by which opposing parties attempt to weigh and balance the factual and legal issues that neither side chooses to risk taking to final resolution, many courts afford a presumption of fairness when the settlement is reached following arm's-length negotiations. *Manual for Complex Litigation*, § 30.43 at 289 (3d ed. 2002); Newberg & Conte, *Newberg on Class Actions*, § 11.42 (3d ed. 1992) ("[A]n initial presumption of fairness is

usually involved if the settlement is recommended by class counsel after arm's-length bargaining."); 3B *Moore's Federal Practice* ¶ 23.1.24[2] (2d ed. 1992). Indeed, courts in the Eighth Circuit recognize an initial presumption that the compromise is fair and reasonable. *See Ortega v. Uponor, Inc.*, 716 F.3d 1057, 1063 (8th Cir. 2013) ("A settlement agreement is 'presumptively valid.'") (citation omitted); *Spencer v. Comserv Corp.*, No. 4-84-794, *et al.*, 1986 U.S. Dist. LEXIS 15863, at *15-*16 (D. Minn. Dec. 30, 1986).

Courts in the Eighth Circuit also recognize the overarching principle that the Court "should not substitute [its] own judgment as to optimal settlement terms for the judgment of the litigants and their counsel." *Grove v. Principal Mut. Life Ins. Co.*, 200 F.R.D. 434, 445 (S.D. Iowa 2001) (quoting *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148-49 (8th Cir. 1999)). As the Supreme Court explained: "Rule 23(e) wisely requires court approval of the terms of any settlement of a class action, but the power to approve or reject a settlement negotiated by the parties before trial does not authorize the court to require the parties to accept a settlement to which they have not agreed. . . . The options available to the District Court [are] accept[] the proposed settlement[,] reject [it] . . . or . . . try the case." *Evans v. Jeff D.*, 475 U.S. 717, 726-27 (1986). In this case, the Court has already granted preliminary approval of the Settlement. This preliminary determination establishes an initial presumption that the settlement was negotiated at arm's length and that the settlement is reasonable, fair and adequate. *See* Newberg & Conte, *Newberg on Class Actions*, § 11.41, at 11-91.

As detailed in the Motion for Preliminary Approval, the Settlement was negotiated by fully informed and experienced counsel after extensive investigation into each side's respective position. Throughout the settlement discussions, Class Counsel and counsel for Defendant each

vigorously advanced their respective claims and defenses. Thus, no doubt exists that this Settlement is entitled to a presumption of fairness.

### B. Criteria to be Considered in Assessing Whether a Class Action Settlement is Fair, Reasonable, and Adequate.

The factors for determining whether a settlement is fair, reasonable, and adequate, and warrants final approval are set forth in *Grunin v. Int'l House of Pancakes*, 513 F.2d 114 (8th Cir. 1975). The *Grunin* factors are as follows: (1) the strength of the case for plaintiffs on the merits, balanced against the amount offered in the settlement; (2) the defendant's overall financial condition and ability to pay; (3) the complexity, length, and expense of further litigation; and (4) the amount of opposition to the settlement. *Grunin*, 513 F.2d at 124; *see also Uponor*, 716 F.3d at 1063; *In re Eng'g Animation Sec. Litig.*, 203 F.R.D. 417, 422 (S.D. Iowa 2001).

In addition, courts in the Eighth Circuit usually consider three additional factors: (1) the experience of counsel; (2) the negotiation process; and (3) the extent of discovery and stage of the proceedings. *See Van Horn*, 840 F.2d at 607. It is well-established, however, that "[t]he most important consideration in this context is 'the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement.'" *Eng'g Animation*, 203 F.R.D. at 422 (quoting *Petrovic*, 200 F.3d at 1150). In this regard, the "reasonableness" of a settlement is not susceptible to a mathematical equation yielding a particularized sum. Rather, "in any case there is a range of reasonableness with respect to a settlement." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *cf. Briles v. Tiburon Fin., LLC*, Case No. 8:15CV241, 2016 U.S. Dist. LEXIS 100249, at *2 (D. Neb. Aug. 1, 2016); *In re Bisphenol-A Polycarbonate Plastic Prods. Liab. Litig.*, MDL No. 1967, 2011 U.S. Dist. LEXIS 50139, at *47 (W.D. Mo. May 10, 2011).

The Settlement proposed in this case clearly falls within the "range of reasonableness" and satisfies the criteria for final approval in the federal Eighth Circuit. Indeed, in the judgment of

Class Counsel, there is serious doubt that a more favorable result could have been obtained if this case were litigated through trial and the inevitable post-trial motions and appeals. As such, the Settlement clearly satisfies the relevant factors, set forth above, thereby warranting this Court's approval.

### C.  The Settlement Satisfies the Criteria for Final Approval

#### 1.  The Strength of Plaintiffs' Case Against the Balanced Terms of Settlement

"The single most important factor in determining whether a settlement is fair, reasonable, and adequate is a balancing of the strength of the plaintiffs' case against the terms of the settlement." *In re Bankamerica Corp. Sec. Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002); *In re Eng'g Animation Sec. Litig.*, 203 F.R.D. at 422 ("[t]he most important consideration in this context is 'the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement.'" (quoting *Petrovic*, 200 F.3d at 1150)). In assessing the Settlement, the Court must weigh the strength of plaintiffs' case on the merits considering the uncertainties of fact and law against the immediacy and certainty of the money offered in the settlement and the potential recovery by the class. *See* Newberg & Conte, *Newberg on Class Actions* § 11.44 at 121-27 (4th ed. 2002). The Court's analysis of the benefits of the settlement need only be a rough approximation of risks of continued litigation rather than an attempt to reach conclusions as to the merits of the case.

In evaluating this factor, the Court's task is not to reach any conclusions as to the merits of the plaintiffs' case, nor should the Court substitute its opinion for that of plaintiffs' counsel and members of the class… rather, the determination herein generally will not go beyond "an amalgam of delicate balancing, gross approximation, and rough justice." *In re Employee Benefit Plans Sec.*

*Litig.*, No. 3-92-708, 1993 U.S. Dist. LEXIS 21226, at *13 (D. Minn. June 2, 1993) (citations omitted).

The Settlement terms (i.e., *pro rata* cash payments and reimbursement of out-of-pocket expenses up to $2,000) falls within the "range of reasonableness." This represents a substantial result for the Settlement Class Members based upon the claims and Defendant's defenses. As an example, under the average-value-per-class member metric, the Settlement provides a $11.95 per class member, which is at or exceeds settlement figures for similar class sizes in data breach actions. *See, e.g., Boykin v. Choice Health Insurances, LLC*, No. 4:22-cv-03940 (D.S.C.) (average settlement value of $7.33 for class size of approximately 68,177 individuals); *Doe et al. V. Knox College, Inc.*, No. 2023LA9 (Knox County, Il.) (average settlement value of $7.33 for class size of approximately 63,097 individuals); *Marshall v. Lamoille Health Partners*, No. 2:22-cv-166 (D. Vt.) (average settlement value of $9.03 for class size of approximately 59,831 individuals).

While Plaintiffs have calculated the maximum value of their claims to be a figure larger than the settlement amount, when the maximum value of Plaintiffs' and the Class's claims are discounted by the identifiable risks, including Defendant's defenses, experience dictates that the interests of the Class are better served by the proposed Settlement. *See Holden v. Burlington Northern, Inc.*, 665 F. Supp. 1398, 1413 (D. Minn. 1987) (recognizing that a settlement valuation based on the optimal amount a class could recover is inappropriate and a settlement just needs to be reasonable, adequate, and fair); *see also West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971) ("In considering the proposed compromise, it seems also to be of importance that (if approved) the substantial amounts of money are available for Class Members now, and not at some distant time in the future. The nature of these actions is such that a final judgment, assuming it to be favorable, could only be obtained

after years of expensive litigation. It has been held proper to take the bird in hand instead of a prospective flock in the bush.") (citations omitted); *In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 46, 53 (S.D.N.Y. 1993) (noting that even a favorable jury verdict "is no guarantee of ultimate success"). More particularly, the proposed Settlement provides Settlement Class Members immediate benefits without the risks and costs of further litigation. *See Holden*, 665 F. Supp. at 1413-14 (noting that "many of the immediate and tangible benefits" of settlement would be lost through continued litigation, making the proposed settlement "an attractive resolution" of the case).

In contrast to these tangible, immediate benefits, the outcome of continued litigation and a trial against Defendant is uncertain. Defendant has vigorously denied Plaintiffs' allegations of wrongdoing. *See Strougo v. Bassini*, 258 F. Supp. 2d 254, 259-60 (S.D.N.Y. 2003) (citing *In re Warner Comm. Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986)). Specifically, Defendant has asserted significant defenses against which Plaintiffs would be required to prevail in motions for summary judgment and class certification.

Even if Plaintiffs had successfully obtained class certification and this matter had continued to trial, it is impossible to predict with any certainty whether the jury or this Court would find favor with the Plaintiffs' allegations or with the Defendant's defenses. "It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced." *West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971). For example, in *In re Apple Computer Sec. Litig.*, No. C-84-20148-(A)-JW, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991), the jury rendered a verdict in favor of plaintiffs and found recoverable damages in excess of $100 million. Nonetheless, the trial

court disagreed and overturned the verdict, entering a judgment notwithstanding the verdict for the individual defendants and ordering a new trial regarding the corporate defendant. *Id.*

Considering the foregoing, the benefits conferred by the Settlement are well within the range of reasonableness. Thus, final approval of the proposed Settlement should be granted.

### 2.   Defendant's Financial Condition

A defendant's financial condition is often considered neutral when, as here, the Defendant's ability to pay is not an issue. *Dryer v. Nat'l Football League*, No. 09-2182 (PAM/AJB), 2013 WL 5888231, at \*4 (D. Minn. Nov. 1, 2013). "However, just because defendants could pay more does not necessarily mean they should have to pay more than the parties negotiated to settle these claims." *Zanghi v. Freightcar Am., Inc.*, No. 3:13-cv-146, 2016 WL 223721, at \*19 (W.D. Pa. Jan. 19, 2016). Because the settlement is appropriate on the merits of the case and is not reduced to account for any collectability concerns, the Parties did not evaluate Defendant's solvency. Thus, this is a neutral factor.

### 3.   The Complexity, Expense, and Likely Duration of the Litigation

Courts have consistently held that the expense and possible duration of litigation are major factors to be considered in evaluating the reasonableness of a settlement. *See Dekro v. Stern Bros. & Co.*, 571 F. Supp. 97, 100 (D. Mo. 1983) (settlement approved where "further litigation in this action would have been lengthy, complex, and expensive"); *In re Telectronics Pacing Sys.*, 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001) (settlement serves laudable goal of eliminating costs and time attendant to continued litigation) (citation omitted). The Eighth Circuit also recognizes that the ability to avoid delay and expense, and reap the benefits of settlement sooner, rather than later, weighs heavily in favor of approving a settlement. *See*, *e.g.*, *Petrovic*, 200 F.3d at 1149; *DeBoer v. Mellon Mortg. Co.*, 64 F.3d, 1171, 1177 (8th Cir. 1995).

11

Defendant raised numerous defenses to the claims advanced by Plaintiffs and the Class. Thus, continued litigation of this Action would undoubtedly add considerable expense and time to this litigation. Moreover, Defendant would have vigorously contested any motion seeking certification of a class in this matter. An unfavorable ruling for Defendant at the class certification stage would have likely resulted in an appeal pursuant to Rule 23(f), further lengthening and complicating this matter. Thus, because this case is settling prior to the resolution of motions for class certification and summary judgment, and prior to completion of expert discovery and trial preparation, there is no question that continued litigation would greatly increase the expense and duration of this matter.

Moreover, the delay through trial, post-trial motions and the appellate process could deny the Class any recovery for years and add substantial time and costs to the litigation. *See In re Xcel Energy, Inc. Sec., Derivative & ERISA Litig.*, 364 F. Supp. 2d 1013 (D. Minn. 2005) (finding settlement removed the risks, delay, and costs associated with continued litigation while delivering assured benefits to the Class and weighed in favor of final approval); *In re Aetna Inc. Sec. Litig.*, No. 1219, 2001 U.S. Dist. LEXIS 68, at *22 (E.D. Pa. Jan. 4, 2001) (risk of delay could have deleterious effects on future recovery). Avoiding these unnecessary expenditures of time and resources clearly benefits all Parties, the Settlement Class, and the Court.

### 4.   There is Minimal Opposition to the Settlement

The number of class members who opt out of a class or who object to a settlement is relevant, though not conclusive, to whether the settlement is reasonable. *See Petrovic*, 200 F.3d at 1152 (identifying "the amount of opposition to the settlement" as a factor for the court to consider in approving a settlement agreement); *DeBoer*, 64 F.3d at 1178 (same). The reaction of the Class underscores the propriety of the Settlement and assures that this Court should approve the Settlement.

Pursuant to the Preliminary Approval Order, copies of the Notice were mailed to approximately 41,837 potential Class Members. Admin Decl. ¶ 6. As of July 1, 2025, no class members have requested exclusion and none have objected. *See id*. at ¶¶ 15, 17. The minimal number of objections to the Settlement constitutes further support that the Settlement is fair, reasonable, adequate, and in the best interest of the Class. *See In re Eng'g Animation Sec. Litig.*, 203 F.R.D. at 422 ("[T]he Court notes there was minimal opposition to this settlement. This weighs in favor of finding it fair."); *see also Mengelkoch v. Bemidji State Univ.*, No. 99-1383 DWF/RLE, 2002 U.S. Dist. LEXIS 308, at *3 (D. Minn. Jan. 8, 2002) (where only three objections were filed, the court approved settlement of class action); *In re BankAmerica Corp. Sec. Litig.*, 350 F.3d at 750 (settlement determined to be fair and reasonable where there were ten objections out of "the hundreds of thousands of eligible class members"); *Burum v. Mankato State Univ.*, No. 98-696 DWF/RLE, 2003 U.S. Dist LEXIS 5446, at *3 (D. Minn. Mar. 31, 2003) (where only one objection filed, the court approved settlement of class action alleging gender-based discrimination); *In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001) ("The vast disparity between the number of potential class members who received notice and the number of objectors creates a strong presumption . . . in favor of the Settlement . . .").

The claims rate as of July 1, 2025, is 5.93%, which represents a very high participation rate when compared to most other data breach settlements. *See, e.g.*, *Hightower v. Receivable Performance Management*, No. 2:22-cv-01683, ECF No. 85 (W.D. Wash Dec. 13, 2024) (approving settlement with 0.65% claims rate); *Weisenberger v. Ameritas Mut. Holding Co.*, No. 4:21-CV-3156, 2024 WL 3903550 at *3 (D. Neb. Aug. 21, 2024) (finding parties efforts to afford class members the opportunity to obtain relief satisfied the Federal Rules and due process when 95,644 class action notices were sent to the settlement class and 1,200 members filed claims);

*Summers v. Sea Mar Cmty. Health Ctrs.*, 29 Wn. App. 2d 476, 486 (2024) (finding trial court did not abuse its discretion in approving data breach settlement with 0.5% claims rate given that it considered the potential difficulty in reaching class members and the provision of *cy pres* relief.); *see also Pollard v. Remington Arms Co., LLC*, 896 F.3d 900, 905–06 (8th Cir. 2018) (finding district court did not abuse its discretion in approving settlement with 0.29% claims rate in non-data breach class action).

### 5.  The Judgment of Experienced Counsel

The view of experienced counsel favoring the settlement is accorded "deference" in appraising the fairness and adequacy of a proposed settlement. *DeBoer*, 64 F.3d at 1178 (views of experienced counsel "are to be accorded deference"); *Spencer*, 1986 U.S. Dist. LEXIS 15863, at *25 ("Where experienced counsel have engaged in arm's-length negotiations to reach a settlement, the trial court is entitled to rely on their judgment") (citation omitted). Here, both sides were represented by counsel with substantial experience in complex class action litigation, and specifically in data breach class actions. Based on their experience and knowledge, counsel for both Parties firmly believe that the proposed Settlement is fair, reasonable and adequate. "The greater experience that class counsel possesses, the greater weight a court tends to attach to counsel's opinions on fairness, adequacy, and reasonableness." *Moore's Federal Practice*, 23.85[2] (3d ed. 2002).

### 6.  The Nature of Negotiations

In examining the fairness of a proposed settlement, the negotiations leading to settlement may also be examined. *See Mars Steel v. Continental Ill. Nat'l Bank & Trust*, 834 F.2d 677, 681-82 (7th Cir. 1987) (in approving a settlement, court must assure that negotiations were non-collusive); *Armstrong v. Board of School Directors of City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980). In considering settlements of class actions, the arm's-length nature of negotiations and

the lack of any indicia of fraud or collusion weigh in favor of court approval. *See In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 410 F. Supp. 659, 667 (D. Minn. 1974) (stating that the "recommendation of experienced counsel is entitled to great weight"); *see also In re Lease Oil Antitrust Litig. (No. II)*, 186 F.R.D. 403, 424-25 (S.D. Tex. 1999) ("[T]he trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." (citations omitted)); *Stewart v. Rubin*, 948 F. Supp. 1077, 1087 (D.D. 1996), *aff'd*, 124 F.3d 1309 (D.C. Cir. 1997) (same); *In re Milkin & Assocs. Sec. Litig.*, 150 F.R.D. 46, 54 (S.D.N.Y. 1993) (same). "Courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered." Newberg & Conte, *Newberg on Class Actions*, § 11.51 (3d ed. 1992). As a result, a proposed settlement that is the result of arm's-length negotiations by class counsel is presumptively fair and reasonable. *See Uponor*, 716 F.3d at 1063; *Weeks v. Kellogg Co.*, Case No. CV 09-08102 (MMM) (RZx), 2011 U.S. Dist. LEXIS 155472, at *44 (C.D. Cal. Nov. 23, 2011).

Here, the settlement negotiations were at arm's-length and without collusion. Indeed, the Settlement was reached only after the Parties' respective counsel conducted an extensive factual investigation into the alleged misconduct, thoroughly researched the law pertinent to the Class's claims and Defendant's defenses, gathered, reviewed, and analyzed documents submitted by the opposing party, and participated in settlement negotiations, including a mediation with a well-respected mediator, meaning each side had a wealth of information at their disposal before entering the Settlement. As such, the Parties were fully informed throughout the process, which allowed their respective counsel to adequately assess the strengths and weaknesses of the case and balance the benefits of settlement against the risks of further litigation. Accordingly, this factor militates in favor of approving the proposed Settlement.

### 7.  The Stage of Proceedings and Extent of Discovery

The volume and substance of the Parties' knowledge of this case are unquestionably adequate to support approval of the Settlement. As stated in Newberg & Conte, *Newberg on Class Actions*, § 11.45 (3d ed. 1992):

> [T]here is no precise formula for what constitutes sufficient evidence to enable the court to analyze intelligently the contested questions of fact. It is clear that the court need not possess evidence to decide the merits of the issue, because the compromise is proposed in order to avoid further litigation. At a minimum, the court must possess sufficient information to raise its decision above mere conjecture.

As previously noted, the Settlement was reached only after each side conducted its own factual investigation into the alleged misconduct, exchanged informal discovery, and thoroughly researched the law applicable to the Class's claims and the Defendant's defenses. Moreover, the negotiations were further informed by the Parties' exchange of information related to class size and damages issues and the assistance of a trained, neutral mediator. Consequently, the Parties had sufficient information to adequately assess the strengths and weaknesses of the case and balance the benefits of settlement against the risks of further litigation.

Accordingly, the extent of investigation completed, and the stage of the proceedings weigh in favor of final approval of the Settlement.

### VII.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court enter an Order: (1) granting final certification of the proposed Settlement Class; (2) granting final approval of the proposed Settlement; (3) finding that notice has been conducted in accordance with the Court-approved notice plan and due process; and (4) dismissing with prejudice Plaintiffs' and Class Members' claims against Defendant.

Dated:  July 11, 2025                    Respectfully Submitted,

Randall K. Pulliam (AR Bar 981105)
Courtney E. Brown (AR Bar 2021156)
**CARNEY BATES & PULLIAM, PLLC**
One Allied Drive, Suite 1400
Little Rock, AR 72202
Phone: (501) 312-8500
Fax: (501) 312-8500
rpulliam@cbplaw.com
cbrown@cbplaw.com

Bryan L. Bleichner (admitted *pro hac vice*)
Philip J. Krzeski (admitted *pro hac vice*)
**CHESTNUT CAMBRONNE PA**
100 Washington Avenue South, Suite 1700
Minneapolis, MN 55401
Phone: (612) 339-7300
Fax: (612) 336-2940
bbleichner@chestnutcambronne.com
pkrzeski@chestnutcambronne.com

Danielle L. Perry (admitted *pro hac vice*)
Gary E. Mason (admitted *pro hac vice*)
**MASON LLP**
5335 Wisconsin Avenue NW, Ste. 640
Washington, DC 20015
Telephone: (202) 429-2290
dperry@masonllp.com
gmason@masonllp.com

*Attorneys for Plaintiffs and the Putative Classes*